DEBRA A. TURRELL *v.* DEPARTMENT OF MENTAL
HEALTH AND ADDICTION SERVICES ET AL.
(AC 34480)

DiPentima, C. J., Sheldon and Harper, Js.

Argued February 6—officially released August 13, 2013

*Peter J. Zagorsky*, for the appellant (plaintiff).

*Yinxia Long*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Philip M. Schulz*, assistant attorney general, for the appellee (named defendant).

*Opinion*

SHELDON, J. The plaintiff, Debra A. Turrell, appeals from the decision of the workers' compensation review board (board) affirming the denial by the workers' compensation commissioner for the eighth district (commissioner) of her claim for benefits under the Connecticut workers' compensation act by dismissing her appeal. The plaintiff initially claims that the board improperly affirmed the commissioner's finding and dismissal on the basis of certain documents of which the commissioner took administrative notice without advising her of his intention to do so or affording her any opportunity to challenge such documents, in violation

of her right to due process. The plaintiff also claims that the commissioner erroneously determined that her work related injury was not a substantial factor in her subsequent need for surgery. We disagree and affirm the decision of the board.

The board recited the following relevant facts and procedural history in affirming the commissioner's decision. "The [plaintiff] was employed by the [defendant, the Department of Mental Health and Addiction Services][1] on July 22, 2007, when she was assaulted by a patient. While working at Connecticut Valley Hospital the [plaintiff] was punched in the mouth and fell to her buttocks and said she briefly lost consciousness. The [plaintiff] was taken to the Emergency Room at Middlesex Hospital immediately following the incident. She returned to work the following Tuesday but still suffered from headaches and returned to the Middlesex Hospital that day. Thereafter, the [plaintiff] treated with a number of physicians: Dr. Thomas Danyliw, Dr. G. Gary Lian, Dr. C. Brendan Montano, and Dr. Joseph Sohn.

"The [plaintiff] suffered continuing headaches, numbness in her arms and in her hands which led Dr. Danyliw to refer the [plaintiff] to Dr. Lian, a neurologist, who administered nerve block injections. The [plaintiff] returned to work light duty at the end of 2007 and then she was returned to work full duty a day and one-half later.

"The trial commissioner took administrative notice of a Voluntary Agreement executed by the parties in October of 2008 and approved by [the Workers' Compensation] Commission [commission] on November 4,

[1] GAB Robins of North America, Inc., the workers' compensation administrator for the state of Connecticut, also was a defendant in the present case, but did not participate in this appeal. We refer in this opinion to the Department of Mental Health and Addiction Services as the defendant in the interest of simplicity.

2008, wherein the [defendant] accepts as compensable a July 22, 2007 work related injury to the [plaintiff's] cervical spine resulting in a [9.5 percent] compromise rating for a permanent partial disability sustained by the [plaintiff] with a maximum medical improvement date of July 22, 2008. About this time the [plaintiff] noticed weakness in her right arm and returned to treat with Dr. Danyliw. Dr. Danyliw referred the [plaintiff] to Dr. Sohn, who first saw the [plaintiff] on November 12, 2008. Dr. Sohn diagnosed the [plaintiff] with degenerative cervical spondylosis, cervical radiculopathy and herniated nucleus pulosus at C5-6 and C4-5. Following this examination Dr. Sohn recommended a cervical fusion and discectomy which the [plaintiff] wished to pursue.

"Following a subsequent examination Dr. Sohn opined that the [plaintiff's] cervical spine problems related mainly to her work related injury because the [plaintiff] had no other events preceding the injury to her spine and she continued to work in a physically demanding job which could have further aggravated her issues that precipitated from her initial injury. Dr. Sohn wrote on January 21, 2009 to the [plaintiff's] union representative, Ken Jones, and provided an explanation for this opinion; noting that the [plaintiff] had degenerative spondolytic changes but believed the injury initiated her clinical symptoms. The trial commissioner took administrative notice of a Form 43 received by this Commission on January 14, 2009 wherein the [defendant] accepts the underlying claim but contested liability for a proposed anterior cervical discectomy and fusion of C4-C5 based upon the opinion of Dr. Steven Selden, [an arthroscopic surgeon].

"Dr. Selden's opinions were also the basis of a Form 36 filed by the [defendant] dated January 14, 2009, and received by the [commission] on January 20, 2009, wherein the [defendant] asserts payments made to the

[plaintiff] from July 22, 2008, represented permanent partial disability payments and that the full permanency amount had been paid. The trial commissioner took administrative notice of the Form 36, wherein Dr. Selden opined that while he agreed with Dr. Sohn surgery was appropriate, he did not find the causation of the injury necessitating the surgery was work related.

"Dr. Jarob Mushaweh, [a neurosurgeon], performed a [c]ommissioner's [e]xamination of the [plaintiff] on April 1, 2009. Dr. Mushaweh noted severe degenerative changes predating the [plaintiff's] injury. He further opined that while the 2007 injury aggravated the [plaintiff's] preexisting condition it did not provide the most substantial factor in the [plaintiff's] need for surgery. In a letter dated May 13, 2009, Dr. Mushaweh clarified his opinion and stated the [plaintiff's] July 22, 2007 incident 'did not play a substantial factor in her overall condition and the requirement for surgical management.'

"The [defendant's] Form 36 request was granted with a maximum medical improvement date of May 13, 2009. The [plaintiff] elected to proceed with the surgery recommended by Dr. Sohn on July 22, 2009.

"The parties deposed Dr. Mushaweh on September 8, 2010. [He] was asked repeatedly if he believed the [plaintiff's] July 22, 2007 work related injury was a substantial factor in her need for surgical intervention. He testified that the [plaintiff's] work related injury did not accelerate the degenerative process of the [plaintiff's] underlying preexisting condition because her preexisting condition had already reached a relatively critical level. He believed the findings on the [plaintiff's] MRI scan had been present probably for years prior to the accident and while the incident played a factor in the [plaintiff's] need for treatment and additional permanent disability, 'I cannot say that the incident played a

factor in requiring surgery.' Dr. Mushaweh believed the injury of July 22, 2007 aggravated the [plaintiff's] preexisting condition but that it did not accelerate the degenerative progression. The [plaintiff] denied being symptomatic prior to the July 22, 2007 incident. Dr. Mushaweh, however, was skeptical of the [plaintiff's] claim that she was asymptomatic prior to the injury saying: 'Quite frankly, I don't know anyone who would flatly deny any even passing history of cervical pain with this amount of degenerative disease.' [Dr. Mushaweh] did not believe surgery was unreasonable but would not have offered the [plaintiff] surgery because she had degenerative changes at the other segments that were liable to worsen more rapidly after her one or two-level fusion. . . .

"Based on these facts, the trial commissioner determined [that] the [plaintiff] sustained a compensable injury to her cervical spine on July 22, 2007, evidenced by a Voluntary Agreement executed by the parties and approved by [the] [c]ommission on November 4, 2008, wherein the [plaintiff] was assigned a [9.5 percent] permanent partial disability rating to her cervical spine with a maximum medical improvement date of July 22, 2008. [The commissioner] further determined that Dr. Selden, the [defendant's] examiner, Dr. Sohn, the [plaintiff's] treating physician, and Dr. Mushaweh, the commissioner's examiner, all agree[d] that the [plaintiff] had preexisting cervical spondylosis. The trial commissioner found Dr. Mushaweh's opinion on the [plaintiff's] need for surgery credible and persuasive and concluded the [plaintiff's] work related injury of July 22, 2007 was not a substantial factor in her need for surgical intervention. The commissioner further found the date of maximum medical improvement was set as July 22, 2008, as memorialized by the Voluntary Agreement executed by the parties and approved by [the] [c]ommission on November 4, 2008. The trial commissioner reopened the

Form 36 previously approved and set a new maximum medical improvement date consistent with the Voluntary Agreement. The trial commissioner dismissed the claim that the [plaintiff's] July 22, 200[9] surgery was compensable.

"The [plaintiff] filed a [m]otion to [c]orrect seeking to have her surgery deemed compensable, based primarily on testimony by Dr. Mushaweh not cited by the trial commissioner in the Finding and Dismissal. The [m]otion also sought to find certain documents should not have been relied on by the trial commissioner by the means of having taken administrative notice of such documents. The trial commissioner denied this [m]otion in its entirety. The [plaintiff] has pursued this appeal."

On appeal to the board, the plaintiff claimed, as she does before this court, that the commissioner (1) violated her right to due process by taking administrative notice of, and considering, certain documents in the commission's records in determining the date on which she reached maximum medical improvement in connection with the injury that she sustained on July 22, 2007, without notifying her of his intention to do so and without affording her the opportunity to challenge those documents, and (2) erroneously determined that her work related injury of July 22, 2007, was not a substantial factor in her need for surgical intervention. The board rejected the plaintiff's claims and, accordingly, affirmed the commissioner's finding and dismissal and dismissed the plaintiff's appeal. This appeal followed.

"As a preliminary matter, we note that when the decision of a commissioner is appealed to the review [board], the review [board] is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. . . . It is the power and the duty of the commissioner, as the trier of fact,

to determine the facts. . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . . Neither the review board nor this court has the power to retry facts. . . .

"The review [board] may not disturb the conclusions that the commissioner draws from the facts found unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . In other words, [t]hese conclusions must stand unless they could not reasonably or logically be reached on the subordinate facts. . . . Our scope of review of the actions of the review [board] is similarly limited. . . . The decision of the review [board] must be correct in law, and must not include facts found without evidence or fail to include material facts which are admitted or undisputed. . . . Furthermore, [i]t is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . .

"[W]e are bound by the subordinate facts found by the commissioner unless those findings are clearly erroneous. . . . A factual finding is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases where there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citations omitted; internal quotation marks omitted.) *O'Connor* v. *Med-Center Home Health Care, Inc.*, 140 Conn. App. 542, 547–49, 59 A.3d 385, cert. denied, 308 Conn. 942, 66 A.3d 884 (2013). With these principles in mind, we address the plaintiff's claims in turn.

I

The plaintiff first claims that the commissioner improperly took administrative notice of, and considered, certain documents in the commission's file in determining that she had reached maximum medical

improvement on July 22, 2008, in connection with the work related injury that she had sustained on July 22, 2007, and thereby violated her right to due process. Specifically, the plaintiff claims that she was denied due process because the commissioner took administrative notice of a prior voluntary agreement signed by the parties and two Form 36[2] forms filed by the defendant, and medical reports attached thereto, after the close of the hearings, absent the request of the parties, without notifying the parties that he intended to do so and without affording her the opportunity to object to the admission of those forms and reports. We are not persuaded.

On the first Form 36 of which the commissioner took administrative notice, which was filed by the defendant on January 20, 2009, the defendant sought to discontinue the plaintiff's benefits as of December 17, 2008, claiming that: "The [defendant] contests liability for temporary total disability based on the attached [independent medical examination] which finds that the current condition for which surgery is proposed is not causally connected to the work related occurrence. The [plaintiff] is at [medical maximum improvement] and [permanent partial disability] benefits have been paid." The attached document referred to in the first Form 36 was a report authored by Dr. Selden on December 17, 2008. In that report, Selden stated that when he evaluated the plaintiff on August 20, 2008, the plaintiff had reached medical maximum improvement and he had assigned a 5 percent permanency rating to her cervical spine. Selden further opined that although the surgery

---

[2] A "Form 36 is a notice to the compensation commissioner and the claimant of the intention of the employer and its insurer to discontinue compensation payments. The filing of this notice and its approval by the commissioner are required by statute in order properly to discontinue payments. General Statutes §§ 31-296, 31-296a, 31-300." (Internal quotation marks omitted.) *Brinson* v. *Finlay Bros. Printing Co.*, 77 Conn. App. 319, 321, 823 A.2d 1223 (2003).

proposed by Dr. Sohn was appropriate, it was not causally related to the plaintiff's July 2007 work injury.

On the second Form 36 of which the commissioner took administrative notice, which was filed on June 4, 2009, the defendant sought to discontinue the plaintiff's compensation payments as of May 13, 2009, claiming that: "The [plaintiff] is at [maximum medical improvement] per the attached report of the commissioner's examiner, Jarob Mushaweh, M.D., the Form 36 is filed in addition to and not in lieu of the Form 36 received on [January 20, 2009] by the 8th district. [Permanent partial disability] payable has been paid effective [September 30, 2008]." In the report referenced in the second Form 36, which was dated May 13, 2009, Mushaweh opined that the plaintiff's work related injury "did not play a substantial factor in her overall condition and the requirement for surgical management." Mushaweh agreed with Selden's assessment that the plaintiff should be assigned a permanency rating of 5 percent to her cervical spine as a result of the July 2007 work related injury. That report made no mention of maximum medical improvement.

In addressing the plaintiff's due process claims, the board explained that the plaintiff's claim regarding the commissioner's allegedly improper determination of the maximum medical improvement date arose in the context of the defendant's assertion that the plaintiff had received an overpayment of benefits. The board concluded that the plaintiff had not been denied due process because the parties were on notice that the commissioner would be considering the issue of overpayment and thus that they "were on notice that the date of maximum medical improvement was at issue." The board explained that although there are "potential pitfalls when a trial commissioner chooses to take administrative notice of prior matters in a case," and that the "wiser approach would have been to provide

the parties with advance notice," the parties "should have anticipated that any and all documentation relevant to the date of maximum medical improvement would be considered by the trial commissioner." The board thus concluded that "[t]he commissioner's failure to specifically state that he was taking administrative notice constitutes harmless error."

We agree with the board's analysis of the plaintiff's due process claim. Assuming, without deciding, that the commissioner should have advised the parties of his intention to consider the documents at issue, the plaintiff cannot genuinely deny that she was on notice that the commissioner would be examining the date of maximum medical improvement in considering the defendant's claim of overpayment. And even if those documents were not properly submitted into evidence and thus not available to the commissioner for his consideration of the plaintiff's date of maximum medical improvement, the plaintiff's claim must fail because Dr. Danyliw's reports of July 22, 2008, which the plaintiff herself submitted into evidence at the formal hearing, set her maximum medical improvement date at July 22, 2008. Because the commissioner's finding that the plaintiff had reached maximum medical improvement on July 22, 2008, is supported by properly admitted evidence that was submitted by the plaintiff, we agree with the board that any error in this regard was harmless and the plaintiff was not thereby denied due process.

II

The plaintiff also claims that the commissioner improperly determined that the work related injury she sustained on July 22, 2007, was not a substantial factor in her subsequent need for surgery. We disagree.

"[I]n Connecticut traditional concepts of proximate cause constitute the rule for determining . . . causation [in workers' compensation cases]. . . . [T]he test

of proximate cause is whether the [employer's] conduct is a substantial factor in bringing about the [employee's] injuries. . . . [Our Supreme Court] has defined proximate cause as [a]n actual cause that is a substantial factor in the resulting harm . . . . The question of proximate causation . . . belongs to the trier of fact because causation is essentially a factual issue. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Citations omitted; internal quotation marks omitted.) *Sapko* v. *State*, 305 Conn. 360, 372–73, 44 A.3d 827 (2012). "[W]hether a sufficient causal connection exists between the employment and a subsequent injury is . . . a question of fact for the commissioner. It is axiomatic that, in reaching that determination, the commissioner often is required to draw an inference from what he has found to be the basic facts. [As (our Supreme Court) previously (has) explained] [t]he propriety of that inference . . . is vital to the validity of the order subsequently entered. But the scope of judicial review of that inference is sharply limited . . . . If supported by evidence and not inconsistent with the law, the . . . [c]ommissioner's inference that an injury did or did not arise out of and in the course of employment is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by the court because of a belief that the one chosen by the . . . [c]ommissioner is factually questionable. . . . Only if no reasonable fact finder could have resolved the proximate cause issue as the commissioner resolved it will the commissioner's decision be reversed by a reviewing court." (Citation omitted; internal quotation marks omitted.) Id., 385–86.

In the present case, the board determined that the commissioner relied on several portions of Mushaweh's deposition testimony, as cited in its decision, and properly considered the totality of his testimony in determining that the plaintiff's July 22, 2007 injury was not a substantial factor in her need for surgery. Although there are portions of the record that may cast doubt on Mushaweh's conclusions, the commissioner was entitled to credit all or any portion of the evidence submitted by the parties in reaching his conclusion. Because the commissioner's determination finds support in the record, we cannot conclude that he erred in determining that the plaintiff's July 22, 2007 work related injury was not a substantial factor in her need for surgery. Accordingly, the board did not err in affirming the commissioner's dismissal of this claim.

The decision of the Workers' Compensation Review Board is affirmed.

In this opinion the other judges concurred.