******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DOMENIC CAMMAROTA *v.* ANTHONY M. GUERRERA
(AC 34521)

Beach, Bear and Keller, Js.

*Argued September 18, 2013—officially released March 18, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Radcliffe, J.)

*John R. Williams*, for the appellant (plaintiff).

*Dennis J. Kokenos*, for the appellee (defendant).

*Opinion*

BEACH, J. The plaintiff, Domenic Cammarota, appeals following the judgment of the trial court directing a verdict in favor of the defendant, Anthony M. Guerrera. The plaintiff claims that the court erred in granting the motion for a directed verdict as to the counts of his complaint alleging (1) professional negligence and (2) breach of fiduciary duty.[1] We agree with his first claim and disagree with his second claim.

Evidence introduced at trial includes the following relevant facts, which we construe in the light most favorable to the plaintiff. See *Curran* v. *Kroll*, 303 Conn. 845, 855–56, 37 A.3d 700 (2012). The plaintiff and his brother, Alfonso Cammarota, were involved in the development of real property. They retained the defendant as counsel, and the defendant prepared an agreement that was agreed to by the plaintiff and by Alfonso Cammarota, who signed it both individually and on behalf of Bella Investors, LLC, his construction company, in December, 2004. The agreement conveyed real estate known as 3404 Madison Avenue in Bridgeport (property), in which the plaintiff and Alfonso Cammarota each owned a 50 percent interest, to 3404 Madison Avenue, Inc. The plaintiff was president, secretary and treasurer of the stock corporation, 3404 Madison Avenue, Inc.; the plaintiff and Alfonso Cammarota each owned 50 percent of the shares of stock in 3404 Madison Avenue, Inc. The agreement further provided that Bella Investors, LLC, would construct six condominium units on the property and that "the net proceeds of the first three units nearest Madison Avenue would belong to [the plaintiff] and the net proceeds of the three units further from the street shall belong to [Alfonso Cammarota]." The agreement provided for the payment of construction costs.

Following the construction of the condominium units, a check for $215,000 payable to the plaintiff was handed to Alfonso Cammarota by either the defendant or an employee in the defendant's law office. Three checks payable to 3404 Madison Avenue, Inc., in the amounts of $269,003.68, $12,558.41, and $189,005.48, respectively, were also delivered to Alfonso Cammarota. The check payable to the plaintiff was deposited, without proper endorsement, into the account of Alfonso Cammarota in May, 2005. The plaintiff's action is based on the supposition that the defendant tortiously delivered the plaintiff's check to Alfonso Cammarota.

The plaintiff testified that he had had "concern[s] about [Alfonso Cammarota] which I expressed to [the defendant]."[2] The plaintiff did not discover that the checks had been given to Alfonso Cammarota until he went to the defendant's office to collect his share of the proceeds, where the defendant informed him that he had previously handed the checks, including the one

payable to the plaintiff, to his brother.

The plaintiff initiated an action against the defendant alleging legal malpractice,[3] conversion and breach of fiduciary duty. At a jury trial, the plaintiff's counsel offered evidence through the testimony of the plaintiff, the defendant, and Vincent Longo, an employee at the bank where the check was deposited. After the plaintiff had rested, the defendant moved for a directed verdict as to all three counts of the plaintiff's complaint. The court granted the motion. This appeal followed.

"Whether the evidence presented by the plaintiff was sufficient to withstand a motion for a directed verdict is a question of law, over which our review is plenary. . . . Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision to direct a verdict in favor of a defendant we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." (Citation omitted; internal quotation marks omitted.) *Curran* v. *Kroll*, supra, 303 Conn. 855–56.

"A verdict may be directed . . . where the claim is that there is insufficient evidence to sustain a favorable verdict. . . . [T]o establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . [T]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor. . . . [W]hether the plaintiff has established a prima facie case is a question of law, over which our review is plenary." (Citations omitted; internal quotation marks omitted.) *Schweiger* v. *Amica Mutual Ins. Co.*, 110 Conn. App. 736, 739, 955 A.2d 1241, cert. denied, 289 Conn. 955, 961 A.2d 421 (2008).

I

The plaintiff first claims that the court erred in granting the motion for a directed verdict as to the count of the complaint alleging professional negligence or legal malpractice. The plaintiff raises two reasons why in his view the court erred in dismissing this count. The court erred, he argues, in dismissing the claim on the grounds that expert testimony, required in most professional negligence or legal malpractice actions, was lacking and any delict on the part of the defendant did not proximately cause harm to the plaintiff. We agree with the plaintiff.

## A

The plaintiff argues that the court erred in holding that he was required to present expert testimony to prove his claim of professional negligence. We agree.

First, it is not at all clear that the count actually sounded in professional negligence. In order for a claim to sound in professional negligence, it must be alleged that (1) the defendant is sued in his or her capacity as a professional, (2) the alleged negligence is of a *specialized professional nature* that arises out of the professional relationship, and (3) the alleged negligence is substantially related to the professional conduct and involved the exercise of professional judgment. See *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, 61 Conn. App. 353, 358, 764 A.2d 203, appeal dismissed, 258 Conn. 711, 784 A.2d 889 (2001).[4]

The plaintiff alleged legal malpractice, but the labeling of the claim is not necessarily dispositive. "[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . Furthermore, in determining the nature of a pleading filed by a party, we are not bound by the label affixed to that pleading by the party." (Citation omitted; internal quotation marks omitted.) *Selimoglu* v. *Phimvongsa*, 119 Conn. App. 645, 651–52, 989 A.2d 121, cert. denied, 296 Conn. 902, 991 A.2d 1103 (2010).

The count alleged that the defendant prepared contractual documents outlining the plans for construction of the condominium units and distribution of the eventual proceeds. Assets from the sale of the units were deposited in the defendant's trust account. Certain amounts were due to the plaintiff individually. Without right, the defendant delivered all proceeds to Alfonso Cammarota. The plaintiff claimed that this behavior on the part of the defendant was negligent and fell below the minimum standard of care.

The evidence in dispute at trial did not involve an arcane issue implicating professional judgment. Rather, evidence was introduced to show that the defendant prepared a check payable to the plaintiff, but handed it to Alfonso Cammarota, who arranged to have it deposited in a bank account not belonging to the plaintiff. Although the language in the complaint could reasonably be construed to describe the exercise of professional judgment—such as contract interpretation and professional obligations—the evidence, also consistent with the complaint, suggested a more straightforward scenario easily understandable by one not versed in the law.

There may be some ambiguity, then, as to whether the action realistically sounded in professional negligence or in ordinary negligence. If the case ultimately required resolution of the question of whether the

defendant committed professional negligence, then ordinarily expert testimony would be required to prove the applicable standard of care and, perhaps, deviation from the standard of care. "The determination of whether expert testimony is needed to support a claim of legal malpractice presents a question of law. . . . Accordingly, our review is plenary. . . . Generally, to prevail on a legal malpractice claim, in Connecticut, a plaintiff must present expert testimony to establish the standard of proper professional skill or care. . . . Not only must the plaintiffs establish the standard of care, but they must also establish that the defendant's conduct legally caused the injury of which they complain." (Citation omitted; internal quotation marks omitted.) *Moore* v. *Crone*, 114 Conn. App. 443, 446, 970 A.2d 757 (2009). If, on the other hand, the case realistically required resolution of an issue of ordinary negligence, then the usual rule is that expert testimony is not required, but rather the jury is to apply the standard of the reasonably prudent person in the same circumstances. See, e.g., *Marfyak* v. *New England Transportation Co.*, 120 Conn. 46, 48, 179 A. 9 (1935). Even in cases clearly alleging professional negligence, however, expert testimony is not required if the issues in dispute are not beyond the knowledge of the ordinary juror. "[Legal] malpractice claims do not necessarily require expert testimony. Although a court requires expert testimony to establish the relevant standard of care in most cases . . . [s]ome aspects of a [legal] malpractice action are considered to be within the realm of a jury's knowledge . . . and, thus, do not require expert testimony." (Citations omitted; internal quotation marks omitted.) *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, supra, 61 Conn. App. 360; see also *Ciarlelli* v. *Romeo*, 46 Conn. App. 277, 283, 699 A.2d 217 (1997) ("[w]hile expert testimony is permitted in a great many instances, it is required only when the question involved goes beyond the field of ordinary knowledge and experience of judges and jurors" [emphasis omitted]).

The question of whether expert testimony is required is not resolved by characterizing the case as sounding in legal malpractice or ordinary negligence, but rather by determining whether the issue, unaided by expert testimony, is within the realm of a jury's ordinary knowledge. Thus, professional negligence claims do not necessarily require expert testimony, and claims of ordinary negligence may require expert testimony. The appropriate question is whether the issue can be reliably decided by a jury without the assistance of expert testimony. The court reasoned that expert testimony was required because the act of giving the checks to Alfonso Cammarota properly was viewed in the context of complicated transactions in which the defendant had a longstanding relationship with both parties. The defendant had drafted the agreement and the documents of incor-

poration, and Alfonso Cammarota's role included obtaining and paying subcontractors.[5] If resolution of the matter depended on the interpretation of complex contractual language or the application of standards peculiar to the practice of the legal profession, then expert testimony may well be required if the plaintiff is to prevail.

Viewed most favorably to the plaintiff, however, this case presented a simple matter of the defendant's handing a person a check, payable to someone else, after the defendant had been warned[6] about that person. Although the jury may well not have made inferences nor drawn conclusions favorable to the plaintiff had the case reached the jury, the scenario was one which, in the light viewed most favorably to the plaintiff, was comprehensible by an ordinary juror. The question of whether handing a check to the wrong person constitutes negligence is within the common experience of the jury and does not require the use of peculiar or specialized knowledge. See *Hatchett* v. *W2X, Inc.*, 993 N.E.2d 944, 965–67 (Ill. App. 2013) (expert testimony not needed in claim of legal malpractice where attorney, inter alia, gave to third party sale proceeds check payable to client), cert. denied, 996 N.E.2d 13 (Ill. 2013); *Asphalt Engineers* v. *Galusha*, 160 Ariz. 134, 135–36, 770 P.2d 1180 (App. 1989) (negligence obvious so as not to require expert testimony where complaint alleged that attorney failed to follow instructions to deliver client's check owed to third party but rather put check in file with "void" written on it); see also 7 Am. Jur. 2d 273, Attorneys at Law § 225 (2007) ("[t]he most appropriate application of the common knowledge doctrine regarding the necessity of expert testimony in a legal malpractice action involves situations where the carelessness of the defendant attorney is readily apparent to anyone of average intelligence and ordinary experience").

As previously discussed, the court viewed the case as one involving more complex issues not readily resolved without the assistance of expert testimony. A court is not to grant a motion for a directed verdict, however, unless the jury could not reasonably have reached a verdict in the plaintiff's favor, under the construction of the case most favoring the plaintiff. Because one construction of the case, viewed most favorably to the plaintiff, did not require expert testimony, the court erred in directing a verdict as to the legal malpractice count on the ground that the plaintiff failed to present expert testimony.[7]

B

The plaintiff next argues that the court erred in granting the defendant's motion for a directed verdict as to the count of professional negligence on the ground that the plaintiff had not presented evidence of proximate cause as a matter of law. We agree.

As stated previously, "[w]hether the evidence presented by the plaintiff was sufficient to withstand a motion for a directed verdict is a question of law, over which our review is plenary." *Curran* v. *Kroll*, supra, 303 Conn. 855.

The court concluded that granting the defendant's motion for a directed verdict as to the count alleging legal malpractice or professional negligence was appropriate for the additional reason that the plaintiff had not presented sufficient evidence to establish proximate cause. The court stated that there was no evidence that the defendant knew or had reason to know that Alfonso Cammarota would create a separate bank account and would deposit the checks, including the check payable to the plaintiff, in that account. The court reasoned that exhibit 5[8] demonstrated that it was the action of Alfonso Cammarota, perhaps in concert with Vincent Longo, a bank employee who deposited the plaintiff's check into Alfonso Cammarota's account without a proper endorsement, that caused harm to the plaintiff, rather than any action of the defendant.

"To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries . . . . The first component of legal cause is causation in fact . . . . The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. . . . The second component of legal cause is proximate cause . . . . [T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . Further, it is the plaintiff who bears the burden to prove an unbroken sequence of events that tied his injuries to the [defendant's conduct]. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . This causal connection must be based upon more than conjecture and surmise." (Citations omitted; internal quotation marks omitted.) *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 250 Conn. 14, 24–26, 734 A.2d 85 (1999). Proximate cause has been defined in case law as "[a]n actual cause that is a substantial factor in the resulting harm . . . . The proximate cause requirement tempers the expansive view of causation [in fact] . . . by the pragmatic . . . shaping [of] rules which are feasible to administer, and yield a workable degree of certainty. . . . Remote or trivial [actual] causes are generally rejected because the determination of the responsibility for another's injury is much too important to be distracted by explorations for obscure consequences or inconsequential causes. . . . In determining proximate cause, the point beyond which the law declines to trace a series of events that exist along a chain signifying actual causation is a matter of fair judgment and a rough sense of justice . . . This

definition of proximate cause implicitly includes . . . [a limitation on] the defendant's liability to foreseeable bounds." (Citation omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 441 n.17, 820 A.2d 258 (2003).

"The question of proximate causation . . . belongs to the trier of fact because causation is essentially a factual issue. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Internal quotation marks omitted.) *Turrell* v. *Dept. of Mental Health & Addiction Services*, 144 Conn. App. 834, 845, 73 A.3d 872, cert. denied, 310 Conn. 930, 78 A.3d 857 (2013).

The plaintiff presented evidence that the defendant or one of the defendant's employees gave a check payable to the plaintiff to Alfonso Cammarota, that a bank employee let him deposit it without a proper endorsement, and that the plaintiff in some manner warned the defendant about Alfonso Cammarota. Whether the defendant's actions were a substantial factor in the check being placed in Alfonso Cammarota's bank account without a proper endorsement, as tempered by the concept of foreseeability; see *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 441 n.17; is a question properly for the jury.[9] The defendant's handing the check to Alfonso Cammarota rather obviously satisfied the "but for" test for causation. The further issue of proximate cause was appropriately one for the jury to decide. We conclude that the court improperly granted the defendant's motion for a directed verdict as to the claim sounding in professional negligence.

II

The plaintiff last claims that the court erred in granting the motion for a directed verdict as to his claim of breach of fiduciary duty. We disagree.

The court reasoned that granting the defendant's motion for a directed verdict as to the count alleging breach of fiduciary duty was proper because there was no evidence of fraud, self-dealing or conflict of interest on the part of the defendant. The plaintiff argues that the court erred in determining that there was no conflict of interest. He contends that the following evidence presented was sufficient for a jury to conclude that there was a breach of fiduciary duty: there was an attorney-client relationship in which the plaintiff entrusted his affairs to the defendant, and the defendant delivered checks payable to the plaintiff and the plaintiff's corporation to Alfonso Cammarota, despite being on notice of a financial conflict of interest between the plaintiff and Alfonso Cammarota. The plaintiff acknowledges in his brief that not every breach of duty in the context of an attorney-client relationship is a breach

of fiduciary duty. "Professional negligence implicates a duty of care, while breach of a fiduciary duty implicates a duty of loyalty and honesty." *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 57, 717 A.2d 724 (1998).

"[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The universe of fiduciary relationships is not static. Rather than attempt to define a fiduciary relationship in precise detail and in such a manner to exclude new situations, we have instead chosen to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other. . . . [A]lthough we have not *expressly* limited the application of . . . traditional principles of fiduciary duty to cases involving only fraud, self-dealing or conflict of interest, the cases in which we have invoked them have involved such deviations." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Di Teresi* v. *Stamford Health System, Inc.*, 142 Conn. App. 72, 94, 63 A.3d 1011 (2013). A "breach of a fiduciary duty implicates a duty of loyalty and honesty." *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, supra, 247 Conn. 57.

The first component of a breach of fiduciary duty is present in this case because an attorney-client relationship imposes a fiduciary duty on the attorney. See *Matza* v. *Matza*, 226 Conn. 166, 184, 627 A.2d 414 (1993). With regard to the second component, the court properly determined that, as a matter of law, there was no conflict of interest in a traditional sense.[10]

The plaintiff does not indicate what specific type of conflict of interest was presented by the evidence,[11] but in his brief he seems to refer to a concurrent conflict of interest based on a dual representation of the plaintiff and Alfonso Cammarota. Rule 1.7 (a) of the Rules of Professional Conduct[12] provides: "Except as provided in subsection (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." "Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person or from the lawyer's own interests." Rules of Professional Conduct 1.7, commentary. Rule 1.7 of the Rules of Professional Conduct "concerns con-

flicts of interest that may arise when an attorney represents a client and such representation will be directly adverse to another client." *Cheverie* v. *Ashcraft & Gerel*, 65 Conn. App. 425, 434, 783 A.2d 474, cert. denied, 258 Conn. 932, 785 A.2d 228 (2001).

The plaintiff did not submit evidence that the defendant's representation of him was directly adverse to that of Alfonso Cammarota, nor can it logically be inferred that any misplaced loyalty motivated the handling of the check. There simply was nothing in the *legal representation* of them that presented a professional conflict of interest. Rather, the plaintiff presented evidence that he warned the defendant about Alfonso Cammarota and that the defendant or someone in his office gave the four checks—including one made out to the plaintiff—to Alfonso Cammarota. There has been no suggestion that the defendant intended to benefit Alfonso Cammarota at the expense of the plaintiff. Any construction of a scenario involving divided loyalty or adverse interests would be, on the evidence presented in this case, a product of unmitigated speculation and conjecture, which is an impermissible basis on which to deny a motion for a directed verdict. See *Curran* v. *Kroll*, supra, 303 Conn. 856. On the evidence presented, the defendant's act in giving the checks to Alfonso Cammarota may have presented a jury question regarding negligence, in that there perhaps may have been a breach of a duty to exercise ordinary care, but did not demonstrate a breach of the duty of loyalty or honesty. Negligence alone is insufficient to support a claim of a breach of fiduciary duty. "Professional negligence alone . . . does not give rise automatically to a claim for breach of fiduciary duty. Although an attorney-client relationship imposes a fiduciary duty on the attorney . . . not every instance of professional negligence results in a breach of that fiduciary duty. . . . Professional negligence implicates a duty of care, while breach of a fiduciary duty implicates a duty of loyalty and honesty." (Citations omitted; internal quotation marks omitted.) *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, supra, 247 Conn. 56–57. Because the duty of loyalty and honesty is not implicated by the facts viewed most favorably to the plaintiff, the court acted properly in granting the defendant's motion for a directed verdict with respect to the count of the complaint alleging breach of fiduciary duty.

The judgment is reversed as to the legal malpractice count, and the case is remanded for further proceedings according to law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The court also directed a verdict as to the final count of the three count complaint, which alleged conversion. The court's judgment as to this count has not been challenged on appeal.

[2] See footnote 6 of this opinion.

[3] This count alleged that "the defendant was negligent in his handling of the plaintiff's affairs and fell below the minimum standard of care for an

attorney in the practice of his profession." For convenience, we use the terms "legal malpractice" and "professional negligence" interchangeably.

[4] *Trimel* arose in the context of a claim of medical, not legal, malpractice. The considerations as to what sorts of activities implicate professional judgment, and thus what sorts of claims aptly fall into the category of professional negligence, are the same.

[5] Alfonso Cammarota was the contractor on the project. The plaintiff testified that he did not attend any of the closings.

[6] The evidence regarding the "warning" was not precise. The evidence, however, must be considered in the light most favorable to the plaintiff.

On direct examination, the plaintiff was asked, "[D]id you explain to the defendant your desire that your financial interest should be protected in this transaction?" The plaintiff responded "yes" and elaborated, "I said how do I know . . . that I'm gonna end up with my share, and [the defendant] said, it's in the contract."

The defendant's counsel asked on cross-examination if the plaintiff had the opinion that Alfonso Cammarota was "a crook" when he "started this transaction." The plaintiff responded, "[a] little bit, yeah." The defendant's counsel questioned whether the plaintiff had ever told the defendant that he "should not trust [Alfonso Cammarota]." The plaintiff answered, "Not in those words. I had questioned the contract."

The following colloquy subsequently occurred between the plaintiff and the defendant's counsel:

"[The Defendant's Counsel]: And . . . you've already testified that you didn't tell [the defendant] that . . . he had to be aware of [Alfonso Cammarota]?

"[The Plaintiff]: I did. I actually . . . I thought I did.

"[The Defendant's Counsel]: You already said in sum [Alfonso Cammarota] was a crook.

"[The Plaintiff]: I didn't say—no. I . . . didn't say that he was a crook. I have concern[s] about my brother which I expressed to [the defendant]. I didn't use that word, "crook," no."

[7] If consideration of the case had required resolution of a legal question, such as whether the defendant exercised acceptable legal judgment in determining to whom the check ought to be payable, the result may have been different.

[8] Exhibit 5 was a memo to Vincent Longo, a bank employee, indicating that bank policies had not been followed when the check payable to the plaintiff was deposited into Alfonso Cammarota's bank account without proper endorsement.

[9] We note that wrongful depositing of a check may be within the foreseeable scope of the risk created by negligently transferring the check. See *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 441 n.17.

[10] There also was no evidence presented of fraud or self-dealing. The plaintiff does not contest the court's conclusion in this regard.

[11] In addition to "where an attorney's own interest conflicts with his client's best interest; see *Phillips* v. *Warden*, 220 Conn. 112, 137–40, 595 A.2d 1356 (1991); a nonexhaustive list of recognized conflicts of interest include the following: representation of codefendants by a single attorney; see *State* v. *Williams*, 203 Conn. 159, 167, 523 A.2d 1284 (1987); where interests of an attorney's client conflict with interests of a former client of the attorney; see *State* v. *Bunkley*, 202 Conn. 629, 652, 522 A.2d 795 (1987); and where an attorney may be a necessary witness. See *State* v. *Crespo*, 246 Conn. 665, 684, 684 n.14, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct 911, 142 L. Ed. 2d 909 (1999); see also generally Rules of Professional Conduct 1.7 through 1.11." *Abrams* v. *Commissioner of Correction*, 119 Conn. App. 414, 419 n.4, 987 A.2d 370, cert. denied, 295 Conn. 920, 991 A.2d 564 (2010).

[12] "[A] violation of a rule of professional conduct does not give rise to a cause of action nor should it create any presumption that a legal duty has been breached." (Internal quotation marks omitted.) *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 636 n.17, 850 A.2d 145 (2004); see also Rules of Professional Conduct, scope. The code, however, is useful in describing conflicts.