******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## ALETA DEROY *v.* STEPHEN M. RECK ET AL.
### (AC 40021)

Keller, Elgo and Bright, Js.

*Syllabus*

The plaintiff sought to recover damages for legal malpractice from the defendant attorneys, who had represented the plaintiff's mother, the decedent, in connection with the decedent's execution of a will that was subsequently found to be null and void due to the decedent's incompetence at the time she executed the will. The trial court granted in part the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court, claiming that the trial court improperly concluded that expert testimony was necessary to establish the standard of proper professional skill or care. Specifically, the plaintiff claimed that the requirement for expert testimony in legal malpractice cases was obviated because the defendants' conduct demonstrated such an obvious and gross want of care and skill that neglect was clear even to a layperson. The plaintiff's claim was based, in part, on the fact that one of the defendant attorneys had referred the decedent to be examined by T, a neuropsychologist, who authored a report concluding that the decedent was suffering from dementia and that it was unlikely that she could make fully informed, thoughtful judgments regarding complex financial or legal issues. After reviewing that report, the defendants decided to proceed with the execution of the decedent's will. *Held* that the trial court properly rendered summary judgment in favor of the defendants, as their alleged malpractice was not so gross and obvious that their failure to comply with the standard of care would have been clear, even to a layperson: the plaintiff's reliance on T's report as the basis for a fact finder to conclude, without expert testimony, that the defendants violated the standard of care was misplaced, as this court concluded previously that T's conclusion in the report was not determinative of whether the decedent was competent to execute the will, the defendants' knowledge of T's report did not mean that they obviously and grossly violated the standard of care by concluding that the decedent was competent to execute the will, and, thus, expert testimony was required to show what actions the defendants, as attorneys, should have taken considering T's report and the correct standard for testamentary capacity; moreover, the fact that the plaintiff ultimately prevailed in her previous action to contest the validity of the will did not obviate the need for expert testimony, and her reliance on the defendants' observations and interactions with the decedent prior to and during the execution of the will only highlighted the need for expert testimony, as the standard of care owed may have been different for each defendant in light of each defendant's particular circumstances, relationship to the decedent and knowledge of her mental state.

Argued December 12, 2018—officially released March 12, 2019

*Procedural History*

Action to recover damages for legal malpractice, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Vacchelli, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Aleta Deroy*, self-represented, the appellant (plaintiff).

*Cristin E. Sheehan*, with whom, on the brief, was *Patrick J. Day*, for the appellees (defendants).

*Opinion*

BRIGHT, J. In this legal malpractice action, the self-represented plaintiff, Aleta Deroy, appeals from the summary judgment rendered by the trial court in favor of the defendant attorneys, Stephen M. Reck, Raymond Trebisacci, and Lewis A. Button III. On appeal, the plaintiff claims, inter alia,[1] that the court improperly concluded that expert testimony was necessary to establish the standard of proper professional skill or care, and that the failure of the plaintiff to disclose such an expert required the court to render summary judgment in favor of the defendants. We affirm the judgment of the trial court.

Viewed in the light most favorable to the plaintiff as the nonmoving party, the record reveals the following facts and procedural history. In February, 2002, the decedent, Edith Baron, was a widow with three children: the plaintiff, Jeanne Baron, and Glen Baron. On February 3 and 12, 2002, the decedent executed quitclaim deeds conveying her interest in an eighty-nine acre farm to herself and to Jeanne Baron as tenants in common. On February 12, 2002, the decedent executed a will (February will) devising the entirety of her estate, including her interest in the farm, to the plaintiff and Glen Baron in equal shares.

In May, 2002, Jeanne Baron's son, Elias Baron, contacted Attorney Button, with whom he was friends, and told him that the decedent desired to make a new will. At that time, Attorney Button was a new lawyer working for Attorney Trebisacci and Attorney Reck in their law firm, Trebisacci & Reck. The proposed new will, which was drafted by Attorney Trebisacci, devised the decedent's interest in the farm to Jeanne Baron and provided that the residue and remainder of the estate would be distributed in equal shares to her three children.

While the new will was being drafted, the decedent was exhibiting symptoms of dementia. Attorney Button, who had not completed many will executions, was concerned about the decedent's testamentary capacity and, as a result, he referred her to be examined by Christopher Tolsdorf, a neuropsychologist. On June 12, 2002, after evaluating the decedent, Dr. Tolsdorf authored a report in which he concluded that she was suffering from dementia. In his report, Dr. Tolsdorf specifically concluded that "[g]iven her cognitive impairments it is unlikely that she would be able to make fully informed, thoughtful judgments regarding complex financial or legal issues." After reviewing and discussing Dr. Tolsdorf's report, Attorney Button and Attorney Trebisacci decided to proceed with the execution of the decedent's new will.[2]

On July 3, 2002, the decedent went to the office of Trebisacci & Reck to execute her new will. Attorney Trebisacci was supposed to preside over the will execu-

tion, but he had to leave the office. He told Attorney Button that if the decedent arrived at the office before he returned, Attorney Button should proceed with the will execution in his absence. When the decedent arrived at the defendants' office, Attorney Trebisacci had not yet returned. Following Attorney Trebisacci's instructions, Attorney Button proceeded with the will execution. During the execution of the new will, Attorney Button observed that the decedent was "so confused that the proceedings had to be halted." In light of the fact that Attorney Trebisacci was not in the office, Attorney Button sought the assistance of the other partner in the firm, Attorney Reck. Attorney Reck questioned the decedent about the newly drafted will, and it was decided that she was to proceed and execute the will. The decedent executed the new will (July will) on the same date.

On July 26, 2006, the decedent died. The plaintiff previously had not been aware of the July will and, thus, she had expected her inheritance of the farm to be in accordance with the terms of the February will. The plaintiff subsequently challenged the July will in the Probate Court on the grounds of undue influence and lack of testamentary capacity. On November 5, 2008, after a hearing, the Probate Court rejected the plaintiff's challenge to the July will.

On December 4, 2008, the plaintiff filed an appeal from the decision of the Probate Court to the Superior Court. On November 3, 2010, after an evidentiary proceeding, the Superior Court issued an oral decision declaring the July will "null and void" on the basis that the decedent was "incompetent" when she executed the July will. Jeanne Baron filed an appeal from the decision of the Superior Court to this court.

On June 5, 2012, this court held that the Superior Court had "applied an incorrect standard to the question of testamentary capacity," and, thus, reversed the judgment of the Superior Court and remanded the matter for further proceedings. *Deroy* v. *Estate of Baron*, 136 Conn. App. 123, 129–30, 43 A.3d 759 (2012). In particular, this court held that the Superior Court incorrectly based its determination that the decedent was not competent on Dr. Tolsdorf's conclusion that the decedent lacked the capacity to make judgments about "complex financial issues." (Internal quotation marks omitted.) Id., 129. Instead, the Superior Court was required to determine whether the decedent "had mind and memory sound enough to know and understand the business upon which she was engaged, that of the execution of a will, at the very time she executed it." (Internal quotation marks omitted.) Id., 128. This court further noted that "[i]t is equally clear that an individual may possess the mental capacity necessary to make a will although incapable of transacting business generally." Id.

On June 18, 2013, after a trial on remand, the Superior Court issued a memorandum of decision in which it found that the decedent lacked the testamentary capacity to execute the July will, and, thus, it declared the July will void. No appeal was taken from the June 18, 2013 judgment.

On June 23, 2015, the plaintiff filed the present legal malpractice action against the defendants. In the operative one count, second amended complaint, the plaintiff alleged that the defendants "were [the decedent's] attorneys in the interviewing, drafting, and execution of her" July will. The plaintiff alleged that, in light of Dr. Tolsdorf's report, the defendants knew or should have known that the decedent lacked the testamentary capacity to execute the July will and, thus, "departed from the standard of professional care owed to protect [the decedent's] legal interest in this matter," and "had committed legal malpractice," by permitting the decedent to execute the July will.

On August 5, 2016, the defendants filed a motion for summary judgment and a memorandum of law in support thereof. The defendants contended, in relevant part, that they were entitled to judgment as a matter of law because the plaintiff had failed to obtain or disclose an expert who could testify regarding the applicable standard of care. In support of their motion, the defendants attached a number of exhibits principally evincing the prior proceedings before the Probate Court and the Superior Court.

On September 26, 2016, the plaintiff filed an objection to the defendants' motion for summary judgment and a memorandum of law in support thereof. The plaintiff argued, among other things, that expert testimony was not required because the defendants' conduct fell within the exception to the expert testimony requirement for obvious and gross want of care and skill. On October 3, 2016, the plaintiff filed several attachments in support of her objection that related to the prior proceedings contesting the July will.[3] The defendants and the plaintiff subsequently filed supplemental memoranda in support of their respective positions.

On December 6, 2016, after a hearing, the court issued a memorandum of decision granting the defendants' motion for summary judgment. The court concluded, in relevant part,[4] that the defendants were entitled to judgment as a matter of law because expert testimony was required to establish whether "the defendants deviated from the prevailing professional standard of care," and the plaintiff had not disclosed such an expert.[5] This appeal followed.

We begin by setting forth the standard of review and legal principles that govern our resolution of this appeal. "It is well established that Practice Book § 17-49 provides that summary judgment shall be rendered

forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Graham* v. *Commissioner of Transportation*, 330 Conn. 400, 414–15, 195 A.3d 664 (2018). "The determination of whether expert testimony is needed to support a claim of legal malpractice presents a question of law. . . . Accordingly, our review is plenary." (Internal quotation marks omitted.) *Grimm* v. *Fox*, 303 Conn. 322, 329, 33 A.3d 205 (2012).

"Summary judgment in favor of a defendant is proper when expert testimony is necessary to prove an essential element of the plaintiff's case and the plaintiff is unable to produce an expert witness to provide such testimony. . . . Malpractice is commonly defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . . Generally, a plaintiff alleging legal malpractice must prove all of the following elements: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Bozelko* v. *Papastavros*, 323 Conn. 275, 282–83, 147 A.3d 1023 (2016).

"As a general rule, for the plaintiff to prevail in a legal malpractice case in Connecticut, he must present expert testimony to establish the standard of proper professional skill or care. . . . The requirement of expert testimony in malpractice cases serves to assist lay people, such as members of the jury . . . to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard." (Internal quotation marks omitted.) *Grimm* v. *Fox*, supra, 303 Conn. 329–30. "There is an exception to this rule, however, [when] there is such an obvious and gross want of care and skill that neglect is clear even to a lay person." (Internal quotation marks omitted.) Id., 330. This exception "is limited to situations in which the . . . attorney essentially has done nothing whatsoever to represent his or her client's interests . . . ." (Inter-

nal quotation marks omitted.) Id., 335. Nevertheless, "[t]here very well may be instances in which an attorney, after a period of competent representation, engages in conduct that clearly falls below the requisite standard of care, and in such a circumstance the jury may not require the aid of expert testimony to understand the applicable standard." Id., 336 n.14; see *Cammarota* v. *Guerrera*, 148 Conn. App. 743, 751–52, 87 A.3d 1134 (concluding that attorney's act of giving check payable to client to another individual constituted negligence within common experience of lay jurors not requiring expert testimony), cert. denied, 311 Conn. 944, 90 A.3d 975 (2014).

Here, it is undisputed that the plaintiff did not retain or disclose an expert witness to testify concerning the standard of care to which the defendants' legal representation should be held. See footnote 5 of this opinion. Instead, the plaintiff contends that the requirement of expert testimony was obviated because the defendants' conduct demonstrated such an obvious and gross want of care and skill that neglect is clear even to a layperson. The gravamen of the plaintiff's claim is that the defendants breached the applicable standard of care by collectively permitting the decedent to execute the July will notwithstanding her apparent mental state, as evinced by Dr. Tolsdorf's report and their observations of the decedent prior to and during the July will execution. We are not persuaded.

In support of her position, the plaintiff primarily relies on *Paul* v. *Gordon*, 58 Conn. App. 724, 754 A.2d 851 (2000). In *Paul*, the defendant attorney agreed to "handle" a summary process action filed against the plaintiffs, his clients. (Internal quotation marks omitted.) Id., 725–26. The defendant, however, took no action in connection with the summary process action and, consequently, judgment by default was rendered against the plaintiffs and they were evicted from the premises. Id., 726. On appeal, this court reversed the judgment of the trial court granting the defendant's motion for summary judgment and held that "no expert testimony is required to establish legal malpractice in a situation where an action has been brought against a party and judgment by default is rendered against that party in the case because his attorney has allegedly done absolutely nothing to protect him. The defendant's alleged failure to take any action whatsoever to protect the interests of the plaintiffs is conduct that involves such an obvious and gross want of care and skill that the neglect would be clear even to a layperson." Id., 728.

In contrast to *Paul*, there is no allegation in the present case that the defendants did "absolutely nothing"; id.; to defend the plaintiff. In the present case, unlike *Paul*, the plaintiff challenges the propriety of the actions taken by the defendants in connection with their representation of the decedent and the execution of the July

will. Indeed, there is no genuine issue of material fact that the defendants took certain precautions in connection with the execution of the July will, including referring the decedent to Dr. Tolsdorf for an evaluation and assessing the decedent at the time the July will was executed. Thus, this court's decision in *Paul* simply does not apply to the facts of this case.

Furthermore, the plaintiff's reliance on Dr. Tolsdorf's report as the basis for a fact finder to conclude, without expert opinion, that the defendants violated the standard of care, is misplaced. This court, in *Deroy*, explicitly held that Dr. Tolsdorf's conclusion that the decedent was unable "to make fully informed, thoughtful judgments regarding complex financial issues" was not determinative of whether the decedent was competent to execute the July will. (Internal quotation marks omitted.) *Deroy* v. *Estate of Baron*, supra, 136 Conn. App. 129. Consequently, contrary to the plaintiff's argument, the defendants' knowledge of Dr. Tolsdorf's report does not mean that they obviously and grossly violated the standard of care by concluding that the decedent was competent to execute the will. To the contrary, expert testimony was required to show what actions the defendants, as attorneys, should have taken considering not just Dr. Tolsdorf's report, but also the correct standard for testamentary capacity as set forth by this court in *Deroy*. See id., 128–29.

Likewise, the fact that the plaintiff ultimately prevailed in the Superior Court in her contest to the validity of the July will does not obviate the need for expert testimony. Neither the Superior Court's decision on remand, nor any of the other decisions regarding the plaintiff's contest of the July will, outlined the standard of care that is required of attorneys in similar situations or addressed the reasonableness of the defendants' actions. See *Grimm* v. *Fox*, supra, 303 Conn. 324, 331–32 (rejecting plaintiff's reliance on "critical statements" made by our Supreme Court in prior decision regarding materials submitted by defendant attorney in connection with prior case).

Finally, the plaintiff's reliance on the defendants' observations and interactions with the decedent prior to and during the July will execution only highlights the need for expert testimony. In particular, expert testimony was required because the standard of care owed may have been different for each defendant. Each defendant had a different level of involvement with the decedent and the execution of the July will. Attorney Button was a new lawyer who had not conducted many will executions. He twice brought his concerns regarding the decedent's testamentary capacity to the partners to whom he reported. He also arranged for the decedent to see Dr. Tolsdorf and discussed Dr. Tolsdorf's report with his superior, Attorney Trebisacci. He went forward with the will execution only after raising his concerns

about the decedent's testamentary capacity with the firm's other partner, Attorney Reck, and after Attorney Reck told him, after interviewing the decedent, to proceed with the execution of the will. Attorney Trebisacci knew of Dr. Tolsdorf's concerns but was not present to witness the decedent when she executed the will; instead, Attorney Trebisacci instructed Attorney Button to proceed in his absence. Attorney Reck questioned and observed the decedent at the execution to determine her capacity at that time. Expert testimony was required to explain the standard of care each defendant owed to the decedent in light of each defendants' particular circumstances, relationship to the decedent, and knowledge of her mental state.

We conclude that the alleged malpractice of each defendant in the present case was not so gross and obvious that their failure to comply with the standard of care was clear, even to a layperson. The present case is not one in which the defendants did "nothing whatsoever"; (internal quotation marks omitted) id., 335; in connection with the execution of the July will; but rather, is one in which the plaintiff contests whether the propriety of the defendants' decision to proceed with the execution of the July will satisfied the requisite professional standard of care. Expert testimony as to the applicable standard of proper professional skill or care applicable under the circumstances, and whether any of the defendants breached the standard applicable to them, is necessary for the resolution of the plaintiff's claim. Accordingly, in the absence of such testimony, the court properly concluded that the defendants were entitled to judgment as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also claims on appeal that the court improperly concluded that the three year statute of limitations contained in General Statutes § 52-577 barred the plaintiff's action as a matter of law. We need not decide that claim because we conclude that the court properly determined that the plaintiff's failure to disclose an expert witness was fatal to her action. See *James* v. *Valley-Shore Y.M.C.A., Inc.*, 125 Conn. App. 174, 176 n.1, 6 A.3d 1199 (2010), cert. denied, 300 Conn. 916, 13 A.3d 1103 (2011).

[2] At some point, Dr. Tolsdorf also issued an undated opinion letter that references his June 12, 2002 report. In the opinion letter, Dr. Tolsdorf averred that "[b]ased on her clinical presentation and her test results it is my professional opinion that [the decedent] was not competent in June, 2002, due to dementia." Although the record is unclear as to when the opinion letter was issued, the use of past tense and the reference to the previously completed report suggests that the opinion letter was issued sometime after June, 2002. This conclusion is buttressed by the fact that the plaintiff has relied only on Dr. Tolsdorf's June 12, 2002 report, and not the undated opinion letter, as a basis for her claims against the defendants. In fact, the plaintiff has never claimed before this court or the trial court that the undated opinion letter was available to the defendants at the time the decedent executed the new will in July, 2002. Consequently, the opinion letter is immaterial to our resolution of this appeal.

[3] The defendants moved to strike certain exhibits submitted by the plaintiff. In a December 6, 2016 memorandum of decision, the court granted the motion to strike in part. Neither party contests this ruling on appeal.

[4] The court also concluded that a genuine issue of material fact existed as to whether the defendants owed a duty to the plaintiff. However, the court determined that the defendants were entitled to judgment as a matter

of law because there was no genuine issue of material fact that the plaintiff's action was barred by the three year statute of limitations contained in § 52-577. The court's conclusion as to the duty owed by the defendants to the plaintiff is not at issue in this appeal and, as outlined previously in footnote 1 of this opinion, we need not consider the court's conclusion regarding § 52-577.

[5] The plaintiff does not dispute that she failed to obtain or disclose an expert regarding the standard of care owed by the defendants. In fact, she attempted to retain such an expert but was unable to find someone willing to take on the matter. In an attempt to rectify this deficiency, the plaintiff, on July 12, 2016, filed a "motion to dispense with expert witness testimony" in which she argued that exceptions to the requirement of expert testimony in a legal malpractice action applied to the present case. The court ordered that argument be scheduled on the motion, however, in light of the court's memorandum of decision granting the motion for summary judgment, no further action was taken on the motion.

--------------------------------