******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAN JODLOWSKI *v.* STANLEY WORKS
(AC 38261)

Lavine, Keller and Flynn, Js.

*Argued September 14—officially released October 18, 2016*

(Appeal from Workers' Compensation Review Board.)

*Jan Jodlowski*, self-represented, the appellant (plaintiff).

*Erik S. Bartlett*, for the appellee (defendant).

*Opinion*

LAVINE, J. The self-represented plaintiff, Jan Jodlowski, appeals from the decision of the Workers' Compensation Review Board (board) affirming the decision of the Workers' Compensation Commissioner (commissioner), who denied the plaintiff's request for additional treatment. On appeal the plaintiff claims that it was improper for the commissioner (1) to deny his request for lumbar fusion surgery, (2) to fail to consider the conflicting opinions of medical experts, and (3) to decline to order a commissioner's medical examination, pursuant to General Statutes § 31-294f (a). We affirm the decision of the board.

Pursuant to a formal hearing held on July 23, 2014, the commissioner found the following facts in his finding and dismissal dated December 15, 2014. The plaintiff sustained compensable injuries to his neck, back, shoulder, leg and hand during the course of his employment with the defendant, Stanley Black and Decker.[1] In his finding and award dated January 7, 2011, the commissioner found that the plaintiff had sustained injuries to his right knee and left shoulder, but denied the plaintiff's claim for a psychiatric injury and total disability benefits. In addition, the commissioner found that the plaintiff's pain management treatment with Jonathan Kost, medical director of the pain treatment center at Hartford Hospital, was reasonable and necessary and ordered the defendant to authorize treatment with Kost. The plaintiff treated with Kost from October, 2006, until the formal hearing. Kost's medical records indicate that the plaintiff continued to complain of pain in multiple parts of his body.

On December 14, 2012, to address the plaintiff's continued complaints of pain, Kost discussed with the plaintiff possible treatment options, including a spinal cord stimulator[2] and a surgical consult. Kost referred the plaintiff to Andrew Wakefield, a neurosurgeon, for a neurosurgical consult, which was conducted on September 19, 2013. Wakefield and his physician assistant, Sean T. Brennan, noted in a report that the plaintiff was not a surgical candidate and that he was unable to find any objective evidence to explain the level of the plaintiff's complaints.

Kost recommended that the plaintiff undergo an electromyography nerve conduction test to determine whether he was a candidate for a spinal cord stimulator. The test was conducted on February 20, 2014; the results of the test were normal.

At the request of the defendant, the plaintiff was examined by Jerrold Kaplan, a physiatrist. Kaplan opined that the plaintiff's pain management was not curative, and he did not recommend a spinal cord stimulator for the plaintiff. He instead recommended that the plaintiff undergo the comprehensive pain management

program at the Rosomoff Center in Florida. On April 18, 2014, Kost agreed with Kaplan that the plaintiff was not a candidate for a spinal cord stimulator and that the plaintiff should undergo treatment at the Rosomoff Center.

The plaintiff referred himself to Joseph Aferzon, a neurosurgeon, who examined him on April 30, 2014. Aferzon opined that the plaintiff should undergo a discogram[3] and spinal fusion[4] at the L5-S1, and possibly L4-5, level. On June 16, 2014, Kost recommended that the plaintiff delay treatment at Rosomoff Center pending a discogram and spinal fusion.[5]

At the formal hearing, the plaintiff contended that, on the basis of the opinions and recommendations of Kost and Aferzon, he had sustained his burden of proof regarding his need for medical treatment, including ongoing pain management, a discogram, and lumbar fusion. The defendant argued, on the basis of the opinions of Wakefield and Kaplan, that the plaintiff had failed to sustain his burden of proof that he is entitled to ongoing medical treatment, including pain management, a discogram, and lumbar fusion.

The commissioner found on the basis of the evidence produced that Wakefield's and Kaplan's opinions were more persuasive than those of Kost and Aferzon regarding the plaintiff's need for a spinal stimulator and lumbar spine surgery. He also found Kaplan's recommendation that the plaintiff undergo treatment at the Rosomoff Center to be more persuasive than Kost's proposed treatment plan. Moreover, the commissioner found that although Kost's pain management treatment might or might not be curative, it enabled the plaintiff to function and was reasonable and necessary. Therefore, the commissioner denied the plaintiff's request for a spinal cord stimulator and for lumbar fusion surgery, and dismissed those claims. The commissioner authorized the plaintiff's claim that he undergo treatment at the Rosomoff Center. The commissioner ordered the defendant to be responsible for all reasonable and necessary costs associated with the plaintiff's need for ongoing pain management with Kost.

Thereafter, the plaintiff filed a petition for review by the board. In his appeal, the plaintiff stated that he saw other physicians to whom he was referred by his primary care physician due to what he claimed were inconsistent "results" among the opinions of Wakefield, Kaplan, and Kost.[6]

The board issued its opinion on August 12, 2015. It was not persuaded by the plaintiff's arguments that the commissioner's decision was legally erroneous. The board concluded, essentially, that the plaintiff's claims constituted a dispute between physicians as to the optimal manner in which to treat the plaintiff's complaints of pain, i.e., the plaintiff and the defendant each pre-

sented differing treatment alternatives to the commissioner. The commissioner found the opinions of the defendant's experts to be more persuasive. As an appellate panel, the board stated that it was not permitted to second-guess the commissioner. In addition, the board disagreed with the plaintiff that the commissioner was obligated to order a commissioner's examination of the plaintiff under § 31-294f. The board, therefore, affirmed the commissioner's finding and dismissal.

The plaintiff appealed to this court, claiming that the decision of the board should be reversed because the commissioner did not grant his request for a spinal cord stimulator and lumbar fusion surgery. He also claims that it was error for the commissioner not to order a commissioner's examination to resolve the dispute between the conflicting medical opinions as to the need for lumbar fusion surgery.

Before addressing the plaintiff's claims, we set forth the applicable standard of review. "A party aggrieved by a commissioner's decision to grant or deny an award may appeal to the board pursuant to General Statutes § 31-301. . . . The appropriate standard applicable to the board when reviewing a decision of a commissioner is well established. [T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is oblig[ated] to hear the appeal on the record and not retry the facts. . . .

"Similarly, on appeal to this court, [o]ur role is to determine whether the review [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them . . . . [Therefore, we ask] whether the commissioner's conclusion can be sustained by the underlying facts." (Citations omitted; internal quotation marks omitted.) *Estate of Haburey* v. *Winchester*, 150 Conn. App. 699, 713, 92 A.3d 265, cert. denied, 312 Conn. 922, 94 A.3d 1201 (2014).

"The [commissioner] alone is charged with the duty of initially selecting the inference [that] seems most reasonably and his choice, if otherwise sustainable, may not be disturbed by a reviewing court." (Internal quotation marks omitted.) Id., 714.

It is well within the authority of the commissioner "to choose which evidence he found persuasive and which evidence he found unpersuasive, and adjudicate the claim accordingly. As the fact finder, the commissioner may reject or accept evidence . . . . It is not the province of this court to second-guess the commissioner's factual determinations. [T]he trier of fact—the commissioner—was free to determine the weight to be afforded to [the] evidence. . . . This court, like the board, is precluded from substituting its judgment of that of the commissioner with respect to factual determinations." (Citations omitted; internal quotation

marks omitted.) Id., 717.

We thoroughly have reviewed the record and the decisions of the commissioner and the board. We agree with the board that it was bound to accept the commissioner's decision as to the medical evidence he found more persuasive. The medical opinions provided by Wakefield and Kaplan are probative evidence that lumbar fusion surgery was not recommended for the plaintiff. We therefore conclude that the board properly affirmed the commissioner's finding and dismissal with respect to treatment of the plaintiff's lumbar spine.

We also agree with the board that § 31-294f[7] does not mandate that the commissioner order a commissioner's examination when conflicting medical evidence is presented to the commissioner. The plaintiff's claim requires us to construe the statute. Statutory construction raises questions of law over which we exercise plenary review. *Cruz* v. *Montanez*, 294 Conn. 357, 367, 984 A.2d 705 (2009). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Kasica* v. *Columbia*, 309 Conn. 85, 93, 70 A.3d 1 (2013).

"[A] court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." (Internal quotation marks omitted.) *Viera* v. *Cohen*, 283 Conn. 412, 431–32, 927 A.2d 843 (2007).

The salient language of § 31-294f (a) is found in its first sentence: "An injured employee shall submit himself to examination by a reputable practicing physician or surgeon, at any time while claiming or receiving compensation, upon the reasonable request of the employer or at the direction of the commissioner. . . ." The statute, therefore, directs an individual seeking workers' compensation benefits to submit to an examination at the request of the employer or at the direction of the commissioner. The statute further defines the

circumstances under which such an examination is to take place and the consequences of a claimant's failure to comply. See footnote 7 of this opinion. The statute does not require the commissioner sua sponte to order a commissioner's examination to resolve conflicting evidence, although there is nothing in the statute to prohibit the commissioner from doing so. Because the commissioner in the present case was under no statutory duty to order a commissioner's examination, the plaintiff's claim to the contrary fails.

The decision of the Workers' Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] The record does not disclose the relation between Stanley Works, as the case is captioned, and Stanley Black and Decker. We presume the discrepancy is the result of a scrivener's error. The plaintiff was injured on November 8, 2004, when an upright tool box tipped over and came in contact with his torso and slid down his chest, abdomen, and legs. The plaintiff strained himself when setting the tool box upright.

[2] Spinal cord stimulation delivers mild electrical impulses to the spinal cord that interrupt pain signals to the brain, replacing them with a tingling sensation. See University of California San Francisco Medical Center, Spinal Cord Treatments, Spinal Cord Stimulation, available at https://www.ucsf-health.org/treatments/spinal cord stimulation/ (last visited October 4, 2016).

[3] A discogram is a test used to evaluate back pain. The test may help a physician determine if an abnormal disk in the spine is causing back pain. Mayo Clinic, Tests and Procedures, Discogram, available at http://www.may-oclinic.org/tests-procedures/discogram/basics/definition/prc-20013848 (last visited October 4, 2016).

[4] Spinal fusion is surgery that permanently connects two or more vertebrae in the spine, eliminating motion between them. Mayo Clinic, Tests and Procedures, Spinal Fusion, available at http://www.mayoclinic.org/tests-pro-cedures/spinal-fusion/home/ovc-20155554 (last visited October 4, 2016).

[5] Although it is not in the record before the board, the defendant indicates in its brief that the plaintiff has undergone a lumbar spinal fusion during the pendency of the present litigation. The plaintiff does not dispute the defendant's representation.

[6] On appeal to the board, the plaintiff sought to submit as additional evidence regarding the results of a magnetic resonance image and the medical notes supporting lumbar surgery that were authored by Aferzon and Jeffrey Bash, an orthopedic surgeon. The defendant objected to the admission of the additional evidence pursuant to *Diaz* v. *Pineda*, 117 Conn. App. 619, 980 A.2d 347 (2009). The board sustained the defendant's objection. On appeal here, the plaintiff does not claim that the board improperly denied his request to present additional evidence.

[7] General Statutes § 31-294f (a) provides: "An injured employee shall submit himself to examination by a reputable practicing physician or surgeon, at any time while claiming or receiving compensation, upon the reasonable request of the employer or at the direction of the commissioner. The examination shall be performed to determine the nature of the injury and the incapacity resulting from the injury. The physician or surgeon shall be selected by the employer from an approved list of physicians and surgeons prepared by the chairman of the Workers' Compensation Commission and shall be paid by the employer. At any examination requested by the employer or directed by the commissioner under this section, the injured employee shall be allowed to have in attendance any reputable practicing physician or surgeon that the employee obtains and pays for himself. The employee shall submit to all other physical examinations as required by this chapter. The refusal of an injured employee to submit himself to a reasonable examination under this section shall suspend his right to compensation during such refusal."