******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ANGELA DIAZ *v.* DEPARTMENT OF SOCIAL
SERVICES ET AL.
(AC 39993)

Lavine, Alvord and Keller, Js.

*Syllabus*

The plaintiff appealed to this court from the decision of the Compensation
Review Board affirming the decision of the Workers' Compensation
Commissioner denying and dismissing her claim for certain medical and
indemnity benefits. The plaintiff claimed, inter alia, that the commis-
sioner improperly failed to credit the allegedly uncontested expert testi-
mony from her primary care physician, D, that the permanent partial
disability of the plaintiff's cervical spine and lumbar spine, as stated in
agreements that had been approved by the commissioner, were substan-
tial factors in causing the plaintiff to be disabled from her work. The
plaintiff had been involved in two motor vehicle accidents that were
not related to her employment. The second accident exacerbated her
preexisting spinal pain and caused her to miss work. The defendant
thereafter rearranged the plaintiff's workstation to fit her in an ergo-
nomic fashion. A and M, two physicians who treated the plaintiff, recom-
mended that she undergo surgery to address the issues with her spine,
but she did not undergo that surgery. The commissioner determined,
inter alia, that the plaintiff had failed to establish that the aggravation
of her cervical and lumbar spine injuries was a substantial contributing
factor to the need for surgery that had been recommended for several
years before she filed her claim for benefits. The plaintiff thereafter
appealed to the board and filed a motion with the board to submit
additional evidence. The board denied the motion to submit additional
evidence and affirmed the commissioner's decision. *Held*:

1. The board properly affirmed the commissioner's denial and dismissal of
   the plaintiff's claim for benefits, as the commissioner's determination
   that the plaintiff's claimed injuries were not a substantial factor in her
   medical conditions and need for surgery was supported by the evidence
   and was not inconsistent with the law: D's opinion that the plaintiff was
   totally disabled as a result of her compensable injury was not undisputed,
   as the commissioner credited and relied, instead, on testimony and
   statements from M that there was no evidence to suggest that the lack
   of ergonomics at the plaintiff's workplace played any role in her need
   for surgery, and from A, who was reluctant to state that the plaintiff's
   failure to use an ergonomic workstation directly caused her cervical
   spine condition; moreover, although D opined that the plaintiff's need
   for surgery was attributable to the lack of proper ergonomics at the
   workplace, cervical fusion surgery had been recommended long before
   the plaintiff filed her claim for benefits and before the voluntary
   agreements were issued, and was continually delayed by the plaintiff
   because of her fear of undergoing the surgery, and although portions
   of the record could cast doubt on the conclusions of A and M, the
   commissioner was entitled to credit all or any portion of the evidence
   in reaching his conclusion.

2. The board properly affirmed the commissioner's denial of the plaintiff's
   motion to correct the commissioner's findings; the findings of the com-
   missioner were supported by the evidence and included all material
   facts as determined by the commissioner, and the plaintiff merely sought
   to have the commissioner conform his findings to the plaintiff's view
   of the facts.

3. The board did not abuse its discretion in denying the plaintiff's motion
   to submit additional evidence; the board reasonably could have con-
   cluded that the plaintiff did not demonstrate that she had good reason
   for not presenting that evidence to the commissioner, as the documents
   that the plaintiff sought to submit were in existence approximately four
   years before the formal hearing on her workers' compensation claim
   commenced, and her motion merely sought to relitigate the issue of a
   witness' credibility.

Argued March 12—officially released September 4, 2018

Appeal from the decision by the Workers' Compensation Commissioner for the Third District denying and dismissing the plaintiff's claim for certain medical and indemnity benefits, brought to the Compensation Review Board, which denied the plaintiff's motion to submit certain evidence; thereafter, the Compensation Review Board affirmed the commissioner's decision, and the plaintiff appealed to this court. *Affirmed.*

*Richard L. Jacobs*, for the appellant (plaintiff).

*Lisa Guttenberg Weiss*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Philip M. Schulz*, assistant attorney general, for the appellees (named defendant et al.).

*Opinion*

ALVORD, J. The plaintiff, Angela Diaz, appeals from the decision of the Workers' Compensation Review Board (board) affirming the finding and dismissal of her claim for medical and indemnity benefits against the defendant, the Department of Social Services,[1] by the Workers' Compensation Commissioner for the Third District (commissioner). On appeal, the plaintiff claims that the board improperly: (1) affirmed the commissioner's finding and dismissal; (2) affirmed the commissioner's denial of the plaintiff's motion to correct the finding; and (3) denied the plaintiff's motion to submit additional evidence. We affirm the decision of the board.

The following facts, found by the commissioner or otherwise undisputed in the record, and procedural history are relevant to the plaintiff's appeal. The plaintiff worked as an eligibility service specialist for the defendant from October, 1986 through December 9, 2010. The plaintiff worked in the defendant's New Haven office. During her period of employment, she worked eight hours a day, five days a week. Her responsibilities included determining a client's eligibility for cash assistance, food stamps, and medical benefits. Her position required a "great deal of walking back and forth on the [intake] line where she met applicants." Although work on the intake line consumed half of her workday, it did not constitute a significant portion of her job duties.

In 1990, the plaintiff was involved in a motor vehicle accident that was not related to her work. As a result of this accident, she sustained disc herniations to her cervical spine and lumbar spine. In 2006, the plaintiff began treatment with Dr. Craig D. O'Connell, a chiropractor. In October, 2008, the plaintiff was involved in a second motor vehicle accident that was not related to her work, which exacerbated her preexisting cervical and lumbar spinal pain and caused her to miss work until March, 2009. In December, 2008, the plaintiff began treatment with Dr. Michael E. Opalak, a neurosurgeon, on referral from her primary care physician, Dr. Sudipta Dey, regarding her injuries stemming from both motor vehicle accidents. Dr. Opalak noted that the recent accident seemed to have worsened some of her lumbar symptoms and increased her neck discomfort.

On January 5, 2009, Dr. Opalak reviewed the plaintiff's imaging and noted that she had some element of disc disease at the lower three levels of the lumbar spine, but most of her symptoms were related to her cervical complaints. Dr. Opalak recommended conservative measures and epidural injections before considering surgery. The next day, Dr. O'Connell drafted a letter from the plaintiff on his letterhead, stating: "I have a history of cervical disc degeneration and herniations dating back to 1990. I felt at that time and still feel

that cervical disc surgery is [too] risky. I have advised neurosurgeon, Michael Opalak that I am not going to have cervical surgery and I would like to continue with conservative chiropractic care which has always helped me in the past.

"Dr. O'Connell has informed me of the possible complications of my cervical spinal herniations and canal stenosis. Among these are possible drop foot, paralysis, and bowel/bladder dysfunction. He also advised if I experienced any of these complications or any other questionable symptoms to contact Dr. [Opalak] (neurosurgeon) or go to the emergency room. (Immediately)." The plaintiff signed the letter.

On September 4, 2009, the plaintiff filed a request with the defendant pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., to be taken off the intake line permanently and for an ergonomic workstation. She requested, inter alia, a new desk and headset. On December 31, Ray Primini of the Department of Administrative Services conducted an evaluation of the plaintiff's workstation. Primini recommended that the defendant provide the plaintiff with an adjustable high-back chair with arms and lumbar support to accommodate someone of her height.[2] Primini also recommended that the defendant provide the plaintiff with a document holder to reduce the need for her to look down. He did not recommend that the defendant provide a new headset, as the defendant had already provided the plaintiff with one.

Primini determined that rather than providing the plaintiff a new desk, the plaintiff's workstation could be rearranged by placing her computer tower and monitor on already existing surfaces, and her keyboard on the existing desk surface. Primini rearranged a table and desk and placed the computer equipment in a way that fit the plaintiff in an ergonomic fashion. On March 10, 2010, a new high-back desk chair was delivered to and signed for by the plaintiff. The defendant also provided the plaintiff with a document holder, which could be adjusted from the back to accommodate vertical and horizontal documents.

On December 9, 2010,[3] the plaintiff filed a first report of injury,[4] complaining of extreme discomfort in the cervical and lumbar spinal regions beginning approximately six months earlier. She attributed her injury to lack of proper ergonomics at her workstation. On January 11, 2011, the plaintiff returned to Dr. Opalak after not having seen him for two years. Dr. Opalak was concerned by how the plaintiff's condition had progressed, as she presented with much more neck and back pain, had difficulty rising from a sitting position, and had difficultly feeling her feet. The plaintiff expressed fear of surgery. Dr. Opalak recommended that, for safety's sake, the plaintiff have a discectomy. On April 1, 2011, Dr. O'Connell disabled the plaintiff

from work due to the absence of a proper ergonomic work environment for her chronic spinal condition.

On May 24, 2011, the plaintiff consulted Dr. Khalid Abbed for a second opinion about the need for surgery. He recommended a cervical decompression surgery prior to addressing the issues with the plaintiff's lumbar spine. On August 3, Dr. Abbed again recommended the surgery, but at the plaintiff's request, agreed to wait six months and reassess. On December 20, Dr. Abbed again recommended surgery, but agreed to wait for approval because a workers' compensation hearing was scheduled.

On September 26, 2011, the commissioner approved a jurisdictional voluntary agreement.[5] The injury was identified as a December 9, 2010 lumbar neuropathy and cervical myelopathy injury due to sitting, which caused an aggravation of prior injuries. Drs. O'Connell and Opalak were listed as treating physicians. Also on September 26, the commissioner approved a voluntary agreement in which Dr. Opalak awarded the plaintiff a 30 percent permanent partial disability rating[6] (PPD) for the December 9 cervical myelopathy.

The plaintiff then requested a change in physician because she believed that Dr. Opalak was rude to her after she indicated that she did not want surgery on her cervical spine because she feared paralysis. On January 26, 2012, Commissioner Scott A. Barton appointed Dr. Abbed as the authorized treating physician. On March 26, a voluntary agreement was approved, in which Dr. Opalak awarded the plaintiff a 5 percent PPD rating for the December 9, 2010 lumbar neuropathy. At a July 23, 2012 informal hearing, Commissioner Barton noted that the plaintiff could put the surgery through her group health insurance and that the defendant would issue a form 43 to disclaim responsibility for it.

On October 19, 2012, Dr. Jacob Mushaweh, a neurosurgeon, performed a medical examination of the plaintiff for the defendant. In his opinion, surgery at the C5-C6 level was reasonable, while surgery at the C6-C7 level amounted to a judgment call. He concluded that there was no evidence to suggest that the lack of ergonomics at work played any role in the plaintiff's need for surgery.

On March 23, 2013, Dr. Abbed performed an anterior cervical discectomy and fusion surgery on the plaintiff. Subsequently, Dr. John Reilly, a plastic surgeon, performed a bilateral trigger thumb release on both of the plaintiff's hands.[7]

Formal hearings were held before the commissioner on September 22, 2014, October 23, 2014, November 18, 2014, January 12, 2015, April 7, 2015, and June 29, 2015. At the beginning of the September 22 hearing, the parties agreed that the issues involved compensability of the plaintiff's cervical spine fusion surgery, total dis-

ability benefits,[8] form 36,[9] form 43,[10] the plaintiff's motion to preclude,[11] and, if the commissioner found compensability, lien reimbursement.[12] The record was closed on November 9, 2015.

On January 5, 2016, the commissioner issued a finding and dismissal. He found that the plaintiff "suffered spinal injuries in separate non-work-related motor vehicle accidents in 1990 and 2008." He found that Dr. Opalak and Dr. Abbed recommended surgery "long before" the plaintiff filed her workers' compensation claim and the formal hearing on that claim, and that her "fear of undergoing surgery was well documented" by her treating physicians and her own testimony. He further found that the plaintiff was not credible, and concluded that she failed to establish that "the aggravation of her cervical and lumbar spine injuries was a substantial contributing factor to the need for surgery that had been recommended for several years." He concluded that the defendant "did not unreasonably contest the [plaintiff's] request for cervical fusion surgery," and that the plaintiff failed "in her burden of persuasion to establish [that] the cervical spine fusion surgery is compensable." He also concluded that the plaintiff failed to establish causation as to her bilateral thumb surgery. The commissioner denied and dismissed the plaintiff's claim for medical and indemnity benefits.[13]

The plaintiff appealed to the board, arguing that the commissioner "failed to credit what she considers to be uncontested expert testimony supporting her claim, and this constitutes reversible error." The board rejected this argument and affirmed the commissioner's finding and dismissal. The board concluded: "We are not persuaded by this argument and find that the trial commissioner's decision is supported by probative evidence that he found persuasive and credible, and a determination by the commissioner that the [plaintiff's] expert witnesses were not persuasive." The board further concluded: "It was the [plaintiff's] burden to persuade the trial commissioner that her workplace conditions were a substantial contributing factor in her need for surgery and resultant medical conditions. We believe that on the record herein a reasonable fact finder could be left unpersuaded." This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the board improperly affirmed the commissioner's finding and dismissal. Specifically, she argues that the commissioner failed to accept "undisputed testimony" of the plaintiff's primary care physician, Dr. Dey,[14] which conclusively established that: (1) the plaintiff has been disabled from work since December 10, 2010; (2) the PPD of 30 percent of her cervical spine, as stated in the January 6, 2012 voluntary agreement, was a substantial factor in causing the plaintiff to be disabled from work; (3) the PPD of

5 percent of her lumbar spine, as stated in the March 26, 2012 voluntary agreement, was a substantial factor in causing the plaintiff to be disabled from work; (4) the combination of the 30 percent disability of the cervical spine and 5 percent disability of the lumbar spine was a substantial factor in causing the plaintiff to be disabled from work; and (5) the PPD of 30 percent of the cervical spine was a substantial factor in causing the plaintiff to undergo cervical spine surgery. We are not persuaded.

The following additional facts and procedural history are relevant to our resolution of this claim. At the April 7, 2015 formal hearing before Commissioner Jack R. Goldberg, the plaintiff entered into evidence the complete transcript of the deposition testimony of Dr. Dey. Dr. Dey, who is board certified in internal medicine, testified about his treatment of the plaintiff, which began in 2002. Dr. Dey testified that he treated the plaintiff for cervical myelopathy, cervical disc herniation, lumbar disc herniation, and lumbar neuropathy. He testified that as early as 2003, he noted when he examined the plaintiff that "she had all the signs and symptoms of cervical myelopathy, and I actually recorded in my notes, she had hyperreflexia, both sides. And I wrote it down, 'Cervical disc herniation with probable cervical myelopathy. Needs intermittent traction. Neuropathic pain. Patient does not want neurosurgical intervention.' "

He testified that, in his opinion, the plaintiff is totally disabled from gainful employment. He testified that "there is a probable relationship with a reasonable degree of medical probability the 30 percent impairment was a substantial factor . . . [i]n being totally disabled from gainful employment." When questioned as to whether the 5 percent PPD of the plaintiff's lumbar spine was a substantial factor in "bringing about" the plaintiff's disability, Dr. Dey responded, "[p]robably, yes." He further testified that the combination of the disabilities of the lumbar and cervical spine "made her completely disabled." With respect to whether the 30 percent PPD of the plaintiff's cervical spine was a substantial factor in causing her to undergo cervical spine surgery, Dr. Dey testified that the plaintiff "had some degree of neck pain as well as cervical disc herniation, for a long time, which got exacerbated over a period of time. She also sustained a motor vehicle accident in between, and subsequently her condition progressed so much that she needed surgical intervention. . . . It was related. . . . It is related, probably related. I cannot—probably related, yes." When questioned about a prior opinion that he gave attributing the plaintiff's permanent disability to her work-related injury,[15] Dr. Dey testified that it was not based on his own certainty. Rather, it was based on the opinion of Dr. O'Connell "[t]o some degree." In Dr. Dey's opinion, however, the lack of an ergonomic workstation was more likely to have exacerbated the plaintiff's preexisting injuries

than not.

The commissioner, in his finding and dismissal, credited Dr. Dey's "opinion . . . that the [plaintiff] in 2003 exhibited the symptoms of cervical myelopathy and displayed neuropathic pain, cervical disc herniation, and did not want neurosurgical intervention." He found, however, that Dr. Dey's opinion "attributing the [plaintiff's] need for surgery to the lack of proper ergonomics at the workplace" was not credible, as it was grounded in speculation or conjecture. He credited the opinion of Dr. Opalak that the plaintiff required cervical fusion surgery in 2008. He also found Dr. Mushaweh's testimony "credible and persuasive that the recommended cervical fusion surgery was reasonable but not attributable to the lack of an ergonomic workstation." He also credited Dr. Abbed's opinion regarding the plaintiff's need for cervical fusion surgery. He also credited and found persuasive Dr. Abbed's statement that he could not "say that [a] failure to use an ergonomic workstation directly caused the [plaintiff's] cervical spine condition," but found his statement that it "probably aggravated a preexisting condition and increased her level of discomfort" to be grounded in speculation and conjecture.

On appeal to the board, the plaintiff argued that "the trial commissioner failed to credit what she considers to be uncontested expert testimony supporting her claim, and this constitutes reversible error." She argued that, pursuant to this court's opinion in *Bode* v. *Connecticut Mason Contractors*, *The Learning Corridor*, 130 Conn. App. 672, 25 A.3d 687, cert. denied, 302 Conn. 942, 29 A.3d 467 (2011), "the trial commissioner was obligated to adopt Dr. Dey's opinion and find that she was totally disabled as a result of her compensable injury." The board rejected the plaintiff's argument, concluding that *Bode* did not stand for the proposition put forth by the plaintiff. The board concluded that "[a]fter reviewing the totality of Dr. Dey's testimony, we are satisfied that a reasonable fact finder could have reached a conclusion that it was insufficiently reliable to support the [plaintiff's] position," and noted that a commissioner is not obligated to find a plaintiff's expert persuasive and reliable and, therefore, could have "considered all [of the relevant evidence of her treaters] and found it less persuasive than the evidence presented by the [defendant]." The board noted the commissioner's conclusion that Dr. Dey's opinions were "substantially influenced and derivative of" Dr. O'Connell's opinions, which the commissioner declined to credit and found unpersuasive. The board further concluded that although the plaintiff characterized Dr. Dey's opinions as "uncontroverted," both Dr. Abbed and Dr. Mushaweh offered differing opinions, and the commissioner "found Dr. Mushaweh in particular credible and persuasive on the issue of workplace causation."

We begin by setting forth the applicable standard of review and legal principles. "A party aggrieved by a commissioner's decision to grant or deny an award may appeal to the board pursuant to General Statutes § 31-301. . . . The appropriate standard applicable to the board when reviewing a decision of a commissioner is well established. [T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is oblig[ated] to hear the appeal on the record and not retry the facts. . . .

"Similarly, on appeal to this court, [o]ur role is to determine whether the review [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them . . . . [Therefore, we ask] whether the commissioner's conclusion can be sustained by the underlying facts. . . .

"The [commissioner] alone is charged with the duty of initially selecting the inference [that] seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court." (Citation omitted; internal quotation marks omitted.) *Jodlowski* v. *Stanley Works*, 169 Conn. App. 103, 108–109, 147 A.3d 741 (2016).

On appeal, the plaintiff challenges the commissioner's failure to find that her claimed December 9, 2010 injuries[16] were substantial factors in her medical conditions and need for surgery. "[I]n Connecticut traditional concepts of proximate cause constitute the rule for determining . . . causation [in workers' compensation cases]. . . . [T]he test of proximate cause is whether the [employer's] conduct is a substantial factor in bringing about the [employee's] injuries. . . . [Our Supreme Court] has defined proximate cause as [a]n actual cause that is a substantial factor in the resulting harm . . . . The question of proximate causation . . . belongs to the trier of fact because causation is essentially a factual issue. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact. . . . [W]hether a sufficient causal connection exists between the employment and a subsequent injury is . . . a question of fact for the commissioner. It is axiomatic that, in reaching that determination, the commissioner often is required to draw an inference from what he has found to be the basic facts. [As (our Supreme Court) previously (has) explained] [t]he propriety of that inference . . . is vital to the validity of the order subsequently entered. But the scope of judicial review of that inference is sharply limited . . . . If supported by evidence and not inconsistent with the law, the . . . [c]ommissioner's inference that an injury did or did not arise out of and in the course of employment is conclusive. No reviewing

court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by the court because of a belief that the one chosen by the . . . [c]ommissioner is factually questionable. . . . Only if no reasonable fact finder could have resolved the proximate cause issue as the commissioner resolved it will the commissioner's decision be reversed by a reviewing court." (Citation omitted; internal quotation marks omitted.) *Turrell* v. *Dept. of Mental Health & Addiction Services*, 144 Conn. App. 834, 844–45, 73 A.3d 872, cert. denied, 310 Conn. 930, 78 A.3d 857 (2013).

We have thoroughly reviewed the record and the decisions of both the commissioner and the board. We agree with the board that it was bound to accept the commissioner's decision as to which medical evidence he found more persuasive. Although the plaintiff characterizes Dr. Dey's testimony as "undisputed," we note, as did the board, that both Dr. Abbed and Dr. Mushaweh offered differing opinions from those of Dr. Dey. The commissioner specifically credited and relied on portions of Dr. Abbed's and Dr. Mushaweh's testimony, and statements that differed from the opinions of Dr. Dey in determining that the plaintiff's claimed December 9, 2010 injuries were not a substantial factor in her medical conditions and need for surgery.[17] That evidence included Dr. Mushaweh's opinion, after examining the plaintiff, that "there was simply no evidence to suggest that the lack of ergonomics at work played any role in the need for surgery," and Dr. Abbed's "reluctance to state that failure to use an ergonomic workstation directly caused the [plaintiff's] cervical spine condition . . . ." Although Dr. Dey opined that the plaintiff's need for surgery was attributable to the lack of proper ergonomics at the workplace, as the commissioner found and the board noted, "cervical fusion surgery was recommended by Dr. Opalak and Dr. Abbed long before the [plaintiff] filed the present claim and before the voluntary agreements were issued, and was continually delayed by her because of fear of undergoing the surgery. . . . [T]he [plaintiff's] fear of undergoing surgery was well documented by Dr. O'Connell, Dr. Opalak, and Dr. Abbed and by the [plaintiff's] testimony."[18]

Although there are portions of the record that may cast doubt on Dr. Abbed's and Dr. Mushaweh's conclusions, the commissioner was entitled to credit all or any portion of the evidence submitted by the parties in reaching his conclusion. See *Turrell* v. *Dept. of Mental Health & Addiction Services*, supra, 144 Conn. App. 846. "It is well within the authority of the commissioner to choose which evidence he found persuasive and which evidence he found unpersuasive, and adjudicate the claim accordingly. As the fact finder, the commissioner may reject or accept evidence . . . . It is not the province of this court to second-guess the commis-

sioner's factual determinations. [T]he trier of fact—the commissioner—was free to determine the weight to be afforded to [the] evidence. . . . This court, like the board, is precluded from substituting its judgment for that of the commissioner with respect to factual determinations." *Jodlowski* v. *Stanley Works*, supra, 169 Conn. App. 109. Because the commissioner's determination is supported by the evidence and not inconsistent with the law,[19] we cannot conclude that he erred in determining that the plaintiff's December 9, 2010 injury was not a substantial factor in her medical conditions and need for surgery.[20]

Accordingly, the board did not err in affirming the commissioner's dismissal of the plaintiff's workers' compensation claim.

II

The plaintiff next claims that the board improperly affirmed the commissioner's denial of her motion to correct the finding. Specifically, the plaintiff argues that the commissioner incorrectly denied certain paragraphs of her motion, "which were based on undisputed evidence."

The following additional facts and procedural history are relevant to our resolution of this claim. On February 3, 2016, the plaintiff filed a motion to correct the finding. In her motion, the plaintiff requested that the commissioner amend his findings by adding forty-two findings to the commissioner's findings of fact. On appeal to this court, the plaintiff claims only that the commissioner erred in denying seven of her forty-two proposed corrections, specifically, those set forth in paragraphs thirteen through sixteen and eighteen through twenty of her motion. Those paragraphs proposed the addition of the following findings: (13) "[a]s the result of the aforementioned compensable injuries to the [plaintiff's] cervical spine and lumbar spine, the [plaintiff] has been disabled from work from [December 10, 2010] through the present time"; (14) "[the 30 percent PPD] of the cervical spine was a substantial factor in causing the [plaintiff's] disability from work"; (15) "[the 5 percent PPD] of the lumbar spine was a substantial factor in causing the [plaintiff's] disability from work"; (16) "[t]he combination of the permanent disability of the cervical spine and the permanent disability of the lumbar spine was a substantial factor in causing the [plaintiff's] disability from work"; (18) "[t]he 30 [percent] impairment of the cervical spine was a substantial factor in causing the cervical anterior [discectomy] and fusion surgery"; (19) "[a]s the result of that surgery the [plaintiff] incurred medical bills"; and (20) "[t]he [plaintiff] had no change in her spinal condition after the surgery."

The plaintiff also requested the modification or deletion of four additional findings.[21] On February 9, 2016,

the commissioner denied the motion to correct in its entirety. On appeal to the board, the board characterized the plaintiff's motion as an effort to "substitute findings supportive of compensability for the findings reached by Commissioner Goldberg" and concluded that the commissioner properly denied the motion.

We begin by setting forth the applicable standard of review and legal principles that guide our analysis. "The finding of the commissioner cannot be changed unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed. . . . It [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . and a fact is not admitted or undisputed merely because it is uncontradicted. . . . A material fact is one that will affect the outcome of the case. . . . Thus, a motion to correct is properly denied when the additional findings sought by the movant would not change the outcome of the case. . . . It is the commissioner . . . who has the discretion to determine the facts. . . . Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it." (Citations omitted; internal quotation marks omitted.) *Ayna* v. *Graebel/CT Movers, Inc.*, supra, 133 Conn. App. 72–73.

The plaintiff asserts that the commissioner erred in declining to include in his findings these facts, "which were based on undisputed evidence." The plaintiff merely seeks to have the commissioner conform his findings to the plaintiff's view of the facts. It is the commissioner, however, who must determine which portions of a witness' statement or what medical opinions were credible and therefore, formed the basis of the commissioner's conclusion. See *Testone* v. *C. R. Gibson Co.*, 114 Conn. App. 210, 222, 969 A.2d 179, cert. denied, 292 Conn. 914, 973 A.2d 663 (2009). "Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it." (Internal quotation marks omitted.) *Ayna* v. *Graebel/CT Movers, Inc.*, supra, 133 Conn. App. 73. The plaintiff cannot expect the commissioner to substitute the plaintiff's conclusions for his own. Furthermore, this claim amounts to little more than a restatement of her previous claim, which we already have rejected, in part I of this opinion.

Because the findings of the commissioner were supported by the evidence and included all material facts as determined by him, we conclude that the board properly affirmed the commissioner's denial of the plaintiff's motion to correct.

### III

The plaintiff finally claims that the board improperly denied her motion to submit additional evidence. Specifically, she argues that this evidence, which was "dis-

covered in response to a freedom of information request that [she] made . . . more than nine months after the evidence was closed," would have "cast [a] new light upon the credibility" of a witness.

The following additional facts and procedural history are relevant to this claim. After the plaintiff's September 4, 2009 ADA request for an ergonomic workstation, Primini recommended that the defendant provide the plaintiff with an adjustable high-back chair with arms and lumbar support. The defendant's employee, Haysteen Nickelson, who was responsible for the purchase of the new chair, arranged for a new high-back desk chair to be delivered to the plaintiff. The new high-back desk chair was delivered to and signed for by the plaintiff on March 10, 2010.

At the January 12, 2015 hearing, the plaintiff testified that the chair was broken when delivered to her. She testified that the chair was not a "[brand new high-back] chair . . . . It was a broken chair they brought from another district office." She further testified that Nickelson "came down and they removed the chair. . . . They took and told me they were going to order me a brand new chair. Which I waited from March until I left in December, and it never came, I never got anything." She testified that when the broken chair was provided, she "was given a blank piece of paper to sign that was matched separately to the purchase order to make it appear as if she approved the delivery of the chair." She further testified that after the broken chair was delivered, Nickelson procured another chair for her from a different district office of the defendant. On November 9, 2015, the commissioner closed the record. On January 5, 2016, the commissioner issued his finding and dismissal. The commissioner found that the plaintiff was not credible, and found the testimony of both Primini and Nickelson to be "credible and persuasive."

On April 28, 2016 the plaintiff filed a motion requesting that the board hear additional evidence or testimony. In her motion, the plaintiff contended that the additional evidence would "[raise] questions about the accuracy of Ms. Nickelson's testimony." The additional evidence consisted of: (1) a December 17, 2010 invoice for a new desk chair from Insalco Corporation, which she obtained through a April 6, 2016 freedom of information request, which showed a "due date" of January 16, 2011; (2) e-mails between employees of the defendant concerning her ergonomic accommodations; and (3) an April, 2016 correspondence from the plaintiff's counsel to the defendant's counsel concerning the plaintiff's chair.

The plaintiff also attached to her motion an affidavit, in which she averred that she did not receive a high-back chair. In support of this, she noted that: (1) the invoice stated that the high-back office chair was delivered on December 17, 2010, eight days after her last

day of work on December 9, (2) e-mails, attached to the motion as exhibit C, showed a department employee, Deborah A. McMullen, writing, "I was verbally informed that the chair brought down on [March 10, 2010] was not a high-back chair," and (3) on April 27, 2016, counsel sent a letter to the defendant's counsel concerning the plaintiff's chair.

The defendant subsequently filed an objection to the plaintiff's motion. It argued, inter alia, that because the documents which the plaintiff sought to offer as additional evidence predated the formal hearings, the plaintiff could have offered them in the proceedings before the commissioner before resting her case. The defendant contended that the plaintiff did not "provide any reason why the additional evidence is material or why it was not presented to the commissioner." The defendant further argued that even if the proposed additional evidence were considered by the board, that because the majority of the commissioner's findings were based on medical records and testimony, and only a small majority of those findings related to the plaintiff's desk chair, "it does not negate or alter the medical evidence upon which the commissioner relied."

In addressing the motion in its memorandum of decision, the board observed: "The [plaintiff] argues that additional evidence is warranted on the issue of the ergonomic chair provided to her because contradictory evidence was presented by Ms. [Nickelson] at the June 29, 2015 hearing which she wishes to challenge. We note that the [plaintiff] did not object to this witness' testimony at that hearing or advise the trial commissioner at the conclusion of her testimony that rebuttal evidence would be proffered to refute her narrative and documentation. Instead, counsel for the [plaintiff] agreed with the trial commissioner [that] the record was complete and the parties would proceed to brief the case." The board agreed with the defendant that the plaintiff lacked sufficient justification for the admission of additional evidence, and also concluded that, because it found in the record "no discussion to the effect that the evidence the [plaintiff] presented at that time was incomplete, we believe admission of this evidence at this juncture would be an effort to try the case in an inappropriate piecemeal fashion." (Internal quotation marks omitted.) The board sustained the defendant's objection and denied the motion to submit additional evidence.

We begin by setting forth the applicable standard of review and legal principles that guide our analysis. "The board is statutorily authorized to review additional evidence, not submitted to the commissioner, in limited circumstances. General Statutes § 31-301 (b) provides: The appeal [from the commissioner] shall be heard by the . . . [b]oard as provided in [General Statutes §] 31-280b. The . . . [b]oard shall hear the appeal on the

record of the hearing before the commissioner, provided, if it is shown to the satisfaction of the board that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the . . . [b]oard may hear additional evidence or testimony. The procedure that parties must employ in order to request the board to review additional evidence is provided in § 31-301-9 of the Regulations of Connecticut State Agencies, which provides: If any party to an appeal shall allege that there were good reasons for failure to present it in the proceedings before the commissioner, he shall by written motion request an opportunity to present such evidence or testimony to the compensation review division, indicating in such motion the nature of such evidence or testimony, the basis of the claim of materiality, and the reasons why it was not presented in the proceedings before the commissioner. The compensation review division may act on such motion with or without a hearing, and if justice so requires may order a certified copy of the evidence for the use of the employer, the employee or both, and such certified copy shall be made a part of the record on such appeal.

"Thus, in order to request the board to review additional evidence, the movant must include in the motion (1) the nature of the evidence, (2) the basis of the claim that the evidence is material and (3) the reason why it was not presented to the commissioner. . . . The question whether additional evidence should be taken calls for an exercise of discretion by the board, which we review under the abuse of discretion standard." (Citation omitted; internal quotation marks omitted.) *Diaz* v. *Pineda*, 117 Conn. App. 619, 627–28, 980 A.2d 347 (2009).

In its memorandum of decision, the board noted that the plaintiff sought to submit additional evidence "because contradictory evidence was presented by [Nickelson] at the June 29, 2015 hearing which she wishes to challenge," but noted that the plaintiff did not object to the witness' testimony at the hearing, nor advise the commissioner that she would offer rebuttal evidence to refute her testimony. The board concluded that the plaintiff lacked sufficient justification for the admission of the additional evidence and that "admission of this evidence at this juncture would be an effort to try the case in an inappropriate piecemeal fashion." (Internal quotation marks omitted.) We agree with the board's conclusion. The plaintiff's motion merely sought, without justification, to relitigate the issue of a witness' credibility through the submission of additional evidence.

We conclude that this court's decision in *Diaz* v. *Pineda*, supra, 117 Conn. App. 619, is instructive on this issue. In *Diaz*, the plaintiff sought, after the commissioner issued his finding and award on July 5, 2007,

to submit additional evidence to the board. Id., 627. The additional evidence consisted of a medical report dated October 29, 2007. Id. The plaintiff argued before the board that "he had good reason to submit [the doctor's] medical report after the close of the formal hearing before the commissioner because he could not afford to be examined at the time of the hearing . . . ." Id., 628. This court, in concluding that the board reasonably could have concluded that the plaintiff had not demonstrated that he had good reasons for not presenting such evidence to the commissioner, noted the board's finding that "the plaintiff had not established that the evidence could not have been obtained at the time of the original hearing." Id. Here, the plaintiff submitted her freedom of information request in April, 2016, five months after the commissioner closed the record in November, 2015. In her motion, she offers no reason why the additional evidence was not presented to the commissioner during the formal hearing.[22] Furthermore, we note that in *Diaz*, the additional evidence was not in existence at the time of the formal hearing, and this court still concluded that the board did not abuse its discretion in finding that the plaintiff had not demonstrated good reason for not presenting such evidence to the commissioner. Here, although the plaintiff characterizes this evidence as "new evidence," the documents that the plaintiff sought to submit as additional evidence were in existence in 2010, approximately four years before the formal hearing on her workers' compensation claim commenced in 2014. In light of this, we conclude that the board reasonably could have concluded that the plaintiff did not demonstrate that she had good reason for not presenting such evidence to the commissioner. The board did not abuse its discretion in denying the plaintiff's motion to submit additional evidence.

The decision of the Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] Gallagher Bassett Services and Meridian Resource Co., LLC, the workers' compensation insurance carriers for the Department of Social Services, also were named as defendants. In the interest of simplicity, we refer in this opinion to the Department of Social Services as the defendant.

[2] The plaintiff is five feet, eleven inches tall.

[3] The plaintiff's last day of work for the defendant was also on December 9, 2010.

[4] See General Statutes § 31-294b (a) ("[a]ny employee who has sustained an injury in the course of his employment shall immediately report the injury to his employer, or some person representing his employer").

[5] See General Statutes § 31-296 (a) ("If an employer and an injured employee, or in case of fatal injury the employee's legal representative or dependent, at a date not earlier than the expiration of the waiting period, reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, the commissioner shall so approve it. A copy of the agreement, with a statement of the commissioner's approval, shall be delivered to each of the parties and thereafter it shall be as binding upon both parties as an award by the commissioner. . . .").

[6] See General Statutes § 31-308 (a) ("[i]f any injury for which compensation is provided under the provisions of this chapter results in partial incapacity, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by the injured employee before his injury . . . and the amount he is able to earn after the injury").

[7] Dr. Mark Melendez, a plastic surgeon of the same office as Dr. Reilly, recommended the bilateral trigger thumb release on January 27, 2014. On March 17, Dr. Reilly noted that the sutures on both thumbs were removed. The medical reports do not contain the date of the procedure, but it is reasonable to assume that it occurred between January 27 and March 17, 2014.

[8] See General Statutes § 31-307 (a) ("[i]f any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the injured employee's average weekly earnings as of the date of the injury").

[9] "A [f]orm 36 is a notice to the compensation commissioner and the [plaintiff] of the intention of the employer and its insurer to discontinue compensation payments. The filing of this notice and its approval by the commissioner are required by statute in order properly to discontinue payments." (Internal quotation marks omitted.) *Brinson* v. *Finlay Bros. Printing Co.*, 77 Conn. App. 319, 320 n.1, 823 A.2d 1223 (2003).

[10] "A form 43 is a disclaimer that notifies a [plaintiff] who seeks workers' compensation benefits that the employer intends to contest liability to pay compensation. If an employer fails timely to file a form 43, a [plaintiff] may file a motion to preclude the employer from contesting the compensability of his claim." (Internal quotation marks omitted.) *Dubrosky* v. *Boehringer Ingelheim Corp.*, 145 Conn. App. 261, 265 n.6, 76 A.3d 657, cert. denied, 310 Conn. 935, 78 A.3d 859 (2013).

[11] On September 9, 2014, the plaintiff filed a motion titled "Motion to Preclude Defense." In it, the plaintiff argued that, because the commissioner approved three voluntary agreements in this case, which "conclusively established" that the need for cervical surgery was causally related to the plaintiff's work injury, the defendant should be precluded from "relitigat[ing] the issue of compensability."

[12] The amount of the lien was $61,046.21.

[13] Because the commissioner did not find compensability, he did not reach the issue of lien reimbursement. The commissioner also denied the plaintiff's motion to preclude, and concluded that "[a]lthough [the] parties initially agreed the issues included form 36, no evidence or testimony was given regarding form 36 approval or denial, and the issue is deemed to be abandoned."

[14] At the formal hearings, Dr. O'Connell also testified about his treatment of the plaintiff. On appeal to this court, however, the plaintiff does not make any argument with respect to the testimony of Dr. O'Connell, but rather only argues that the commissioner failed to accept the "undisputed evidence" presented through the testimony of Dr. Dey.

[15] Dr. Dey's opinion was contained in a December 18, 2013 letter, stating: "I believe that [the plaintiff's] permanent disability is directly contributed to her work-related injury . . . ."

[16] Throughout this opinion, we refer to the plaintiff's cervical myelopathy and lumbar neuropathy, as described in the voluntary agreements, as the plaintiff's December 9, 2010 injuries. The defendant does not contest that the injuries, which the plaintiff first reported to the defendant on December 9, 2010, were compensable work-related injuries.

[17] The board also noted that Dr. Dey "had difficulty delineating his rationale for finding the [plaintiff] totally disabled as '[t]he reason for [the] opinion is that I can't tell you because I am not [a] medical disability examiner, the 30 percent impairment has been established before.' " The board also noted that in drafting letters on behalf of the plaintiff, Dr. Dey relied on medical reports and opinions provided by Dr. O'Connell. Furthermore, "[w]hen asked if the prior motor vehicle accidents the [plaintiff] had sustained could have required her to undergo surgery in the absence of workplace exposure he said that [t]here's a big if in there. . . . He agreed with counsel that his theory of workplace causation of the [plaintiff]'s condition was based on the [Dr. O'Connell's] theory of causation to some degree." (Citation omitted; internal quotation marks omitted.)

We agree with the board's conclusion that, on the basis of these observa-

tions, "[a]fter reviewing the totality of Dr. Dey's testimony, we are satisfied that a reasonable fact finder could have reached a conclusion that [the testimony] was insufficiently reliable to support the [plaintiff's] position. We also find evidence in the record supporting the trial commissioner's conclusion that Dr. Dey's opinions were substantially influenced and derivative of the opinions of Dr. O'Connell, which the commissioner found unpersuasive in [paragraph 1 of his conclusion]. We note that Dr. O'Connell offered live testimony before the trial commissioner, and the commissioner's assessment of the persuasive value of this witness is essentially inviolate on appeal." See *Ayna* v. *Graebel/CT Movers, Inc.*, 133 Conn. App. 65, 71, 33 A.3d 832 ("[i]t is within the discretion of the commissioner alone to determine the credibility of witnesses and the weighing of the evidence"), cert. denied, 304 Conn. 905, 38 A.3d 1201 (2012).

[18] In her brief to this court, the plaintiff argues that "the trial commissioner did not rule on whether the plaintiff was disabled from work. His opinion touched only on the need for surgery." We conclude that the plaintiff's observation is immaterial to our analysis. Although the commissioner did not explicitly find that the plaintiff was not totally disabled from work, logic dictates that by finding that the claimed December 9, 2010 injury was not a substantial factor in causing the plaintiff's need for surgery, he implicitly found that the plaintiff was not totally disabled as the result of a compensable, work-related injury. Put another way, the December 9 injury, if not a substantial factor in causing the plaintiff's need for surgery, also could not be a substantial factor in causing her to be totally disabled.

[19] The plaintiff argues, as she did on appeal to the board, that this court's decision in *Bode* v. *Connecticut Mason Contractors, The Learning Corridor*, supra, 130 Conn. App. 672, supports her claim that "[t]here was no basis in the record in the present case for rejecting the testimony of Dr. Dey." According to the plaintiff, *Bode* held, inter alia, that "the trier of fact may not ignore undisputed probative evidence."

In *Bode*, the issue was whether the plaintiff was employable during a three and one-half year period following a work injury. Id., 674, 676. In his finding and dismissal, the commissioner failed to make findings with respect to the reliability of the vocational evidence offered by the plaintiff. Id., 684. Specifically, the commissioner did not discuss two vocational reports, both of which stated that the plaintiff was unemployable, and both of which were conducted closer in time than the others to his claim and the hearings. Id., 683. This court concluded: "The record reflects that there was no evidence that the plaintiff *was* employable, at any time, after February 5, 2004. There were two vocational reports dated August, 2004, and July, 2008, both of which stated that the plaintiff *was not* employable. The commissioner also had before him the job search forms showing the plaintiff's failed attempts to secure employment. Despite this evidence, he (1) made no conclusions as to the reliability of the vocational reports or regarding the plaintiff's employability, (2) ignored the August, 2004 vocational report and the job search forms and (3) concluded that the plaintiff was not entitled to total temporary disability benefits." (Emphasis in original.) Id., 686.

Although we agree with the plaintiff that this court in *Bode* concluded that the commissioner erred in discounting documentary evidence which showed that the plaintiff was temporarily disabled from work, *Bode* is distinguishable from the present case. Here, as we have concluded, Dr. Dey's testimony was not "undisputed . . . ." Dr. Abbed disputed Dr. Dey's testimony, and Dr. Mushaweh disputed Dr. Dey's testimony. This was not a case where there was "no evidence" from which the commissioner could conclude that the plaintiff's claimed December 9, 2010 injury was not a substantial factor in her medical conditions and need for surgery. This is also not like *Bode*, where the commissioner failed to make findings with respect to material pieces of evidence. The finding and dismissal contained an abundance of well reasoned findings, which are supported by the record. We therefore conclude that the plaintiff's reliance on *Bode* is misplaced.

[20] The plaintiff also argues that the voluntary agreements awarding 30 percent PPD to the plaintiff for an injury to her cervical spine, and 5 percent PPD to the plaintiff for an injury to her lumbar spine, "negates the trial commissioner's finding that the disabilities were caused by discrete events, the motor vehicle accidents." Essentially, the plaintiff argues that the voluntary agreements established that she suffered from "disabilities . . . as a result of her compensable injuries of December 9, 2010." In the plaintiff's view, "[t]he trial commissioner was not at liberty to conclude that the plaintiff had not suffered 30 percent PPD of the cervical spine and 5 percent of the lumbar spine as the result of her injuries of December 9, 2010. Those

PPDs existed notwithstanding that the plaintiff had been injured in two motor vehicle accidents." We are not persuaded.

The commissioner found that the plaintiff suffered spinal injuries in motor vehicle accidents in 1990 and 2008 that were not related to her work, and that the voluntary agreements regarding the plaintiff's cervical spine and lumbar spine injuries "attributed the December 9, 2010 injuries to sitting that caused an aggravation of previous injuries." Despite the voluntary agreements, the commissioner went on to find that the plaintiff had not "established the aggravation of her cervical and lumbar spine injuries was a substantial contributing factor to the need for surgery that had been recommended for several years." He did not, as the plaintiff contends, "conclude that the plaintiff had not suffered 30 percent PPD of the cervical spine and 5 percent of the lumbar spine as the result of her injuries of December 9, 2010." With respect to the commissioner's finding that "the disabilities were caused by discrete events, the motor vehicle accidents," we note that a commissioner's conclusion as to causation of an injury "is afforded deference similar in degree to that afforded a conclusion by a trial judge or jury on an issue of proximate cause." *Funaioli* v. *New London*, 61 Conn. App. 131, 136, 763 A.2d 22 (2000). Because, as we have concluded, the commissioner's conclusion is supported by competent evidence and is otherwise consistent with the law, we reject the plaintiff's argument that, in light of the voluntary agreements, the commissioner was not entitled to find that the plaintiff failed to meet her burden of proof with respect to the issue of causation.

[21] The requested modifications included replacing "Finding and Dismissal" with "Finding and Award," replacing the statement, "I Find that the [plaintiff] has failed in her burden of persuasion to establish the cervical spine fusion surgery is compensable," with, "I find that the [plaintiff] has proved by a preponderance of the evidence that the cervical spine fusion surgery is compensable," and finally, replacing, "WHEREFORE, it is Ordered, Adjudged, Decreed and Awarded that: The claim for medical and indemnity benefits pursuant to the claimed injury of December 9, 2010, under the Workers' Compensation Act [General Statutes § 31-275 et seq.] is denied and dismissed," with, "WHEREFORE, it is Ordered, Adjudicated, Decreed and Awarded that the claim for medical and indemnity benefits pursuant to the injuries of December 9, 2010, under the Workers' Compensation Act is granted." As support for her requests, the plaintiff attached to her motion portions of the testimony of Dr. O'Connell, the plaintiff, and Dr. Dey.

[22] In her brief to this court, the plaintiff cites *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), for the proposition that "the defendant was required to disclose that evidence to the plaintiff before the trial evidence was completed, since that evidence from its records was contrary to the position that the defendant took before the trial commissioner." *Brady* is a criminal case, in which the United States Supreme Court held: "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. *Brady* is plainly inapposite to the present case, and as such, does not warrant further discussion.

───────────────────────────